411 So.2d 866 (1982)
Paul William SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 58588.
Supreme Court of Florida.
March 11, 1982.
*867 Robert M. Leen of Leen & Schneider, Hollywood, for appellant.
Jim Smith, Atty. Gen. and Stewart J. Bellus, Asst. Atty. Gen., West Palm Beach, for appellee.
Nathan Z. Dershowitz and Victoria B. Eiger, New York City, for the American Jewish Congress, amicus curiae.
PER CURIAM.
Paul William Scott appeals his conviction for the first-degree bludgeoning murder of James Alessi and his sentence of death. Having reviewed the record and considered the issues presented by Scott, we find no reversible error and affirm his conviction and sentence.
On the evening of the murder, Scott and his coperpetrator, Richard Kondian, told Charles Soutullo of their plan to rob and to kill Alessi and asked him to join them. Soutullo declined the invitation. Later that evening, Alessi picked up Scott and Kondian. At approximately 11 p.m. they arrived at Alessi's father's home where the victim borrowed his father's station wagon and obtained a patio umbrella from his father. They then drove off in the victim's car and in his father's car. The patio umbrella was later found in the victim's backyard.
The next morning the victim's nude body, which was covered with blood, was discovered in his home. His hands and feet were tightly bound with electrical cord and telephone wire. He had been brutally beaten about his head, chest, and arms. He had sustained six blows to the head with a blunt instrument, one of which was so severe that it had caused a compressed fracture of the skull. The head injuries were the cause of his death. There were many signs of a violent struggle by the victim in his attempt to get away from his assailants. Throughout the house were broken articles and bloodstains on the walls, furniture, curtains, and floors. Scott's fingerprints were found on various items throughout the victim's home, including the neck of a broken vase and the bloodstained knife on the sofa which apparently had been used to cut the electrical cords used to tie the victim.
After bludgeoning the victim to death, Scott and Kondian rummaged through the house. The same night as the murder and as a part of their intended scheme to rob and to kill Alessi, they went to the victim's flower shop with a key and took most of the gold in the shop. They also took the victim's car. Scott was found a month later in Sacramento, California. He had in his possession various items of jewelry, including a golden bear charm. The victim wore a golden bear charm, and there was one in his shop the day he was killed.
Although Scott was indicted for the premeditated beating death of Alessi, the State, in addition to proceeding on the theory of premeditated murder, also sought to prove felony murder.
Scott challenges his conviction of first-degree murder on several grounds, none of which we find to be meritorious. Initially, he argues that the evidence presented by the State was not sufficient to prove him guilty beyond a reasonable doubt and that the evidence does not exclude a *868 reasonable hypothesis of innocence. We disagree and hold there is substantial, competent evidence in the record to sustain Scott's conviction. Scott and Kondian made a definite statement preceding the murder of their plans to rob and to kill Alessi. The victim's father identified Scott as one of the two men who had been with his son late on the evening of his death. The patio umbrella they had picked up was found the next morning at the victim's home, evidencing that the three had gone there later that evening. Scott's fingerprints were found throughout the house in places reasonably consistent only with the conclusion that he had committed the homicide. Items of gold jewelry were found in Scott's motel room in Sacramento, California, including a golden bear charm like the one that was taken from the victim's shop the day of his murder. Also, a gold bracelet like the one taken from the victim's shop was found in the possession of Kondian's girl friend. Viewing all the evidence, presented at trial, we conclude that the evidence is inconsistent with any reasonable hypothesis of innocence. See Thomas v. State, 374 So.2d 508 (Fla. 1979), cert. denied, 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980).
Scott also contends that the evidence does not support a finding of premeditation nor does it prove robbery or burglary. The manner in which the victim was murdered in itself evidences premeditation. There was a long bloody chase throughout the house, the victim was badly beaten, his hands and feet were tied while he was still alive, and he was struck on the head six times with a blunt instrument. The evidence was clearly sufficient to establish premeditation. See Mines v. State, 390 So.2d 332 (Fla. 1980), cert. denied, 451 U.S. 916, 101 S.Ct. 1994, 68 L.Ed.2d 308 (1981). We likewise reject Scott's contention regarding lack of proof of the robbery and burglary.
Scott also argues that the court committed reversible error when it sustained the State's objection on the basis of irrelevance to the question asked of the State's witness Soutullo by defense counsel on cross-examination. Defense counsel asked Soutullo what he was doing for a living in Fort Lauderdale. After the State objected, the court asked defense what was the relevancy of the question, and defense answered, "Just where he lived, what he did for a living." Defense did not assert that this question went to impeachment. We find no reversible error committed by the trial court in sustaining the State's objection.
Likewise, we hold that the trial court did not commit reversible error in admitting into evidence a gold bracelet like the one taken from the victim's store. This gold bracelet had been taken from Kondian's girl friend.
Scott further contends that the court reversibly erred in instructing the jury on felony murder. We disagree and find that there is sufficient evidence in the record to support the felony murder instructions given by the trial court.
Scott joined in the issue presented and briefed by amicus, American Jewish Congress. Amicus contends that the jury selection on Yom Kippur violated defendant's right to a representative jury. Amicus concedes that no records were kept which would indicate the numbers of persons asked to be excused, or who were excused, because of the Jewish holiday. There is no evidence in this case demonstrating deliberate or systematic exclusion of members of the Jewish faith and no evidence of underrepresentation on the jury panel in this case. Amicus has failed to make a prima facie showing that Scott was systematically denied a jury representative of a cross section of the community. Furthermore, we hold that the trial court did not abuse its discretion in denying Scott's motion for continuance.
In addition to reviewing the record in light of the alleged errors asserted by Scott which are without merit, we have reviewed the evidence pursuant to Florida Rule of Appellate Procedure 9.140(f), and we conclude that no new trial is required. *869 Accordingly, we affirm the conviction for murder in the first degree.
Scott also challenges his sentence of death which was imposed by the court after the jury had recommended the death penalty. The trial court found four aggravating circumstances: (1) Defendant was under sentence of imprisonment  parole  when he committed the murder. (2) He was previously convicted of a felony involving violence to the person  second-degree murder. (3) The murder was committed while he was engaged or was an accomplice in the commission of, or the attempt to commit, a robbery and/or burglary and was committed for pecuniary gain. This was counted as one aggravating circumstance. (4) The murder was cruel. As to the cruelty of the offense, the court stated:
(h) The capital felony was cruel. A picture is worth a thousand words and all one must do to justify this aggravating circumstance is to view the color photographs of the interior of the house where the homicide occurred and conclude with the body of the victim with his hands and feet tied. This is not one or two blows which resulted in instantaneous or near instantaneous death. The struggle between the assailants and the victim moved from room to room; blood is everywhere. The doctor testified the victim was still alive when his hands and feet were bound. There remained no reason to pursue the beating to accomplish the thefts. The subsequent blows to the head were fatal and the entire episode can only reflect there being imposed upon the victim a high degree of pain with little indifference to, or even the enjoyment of the suffering of the victim. It was pitiless and totally unnecessary to achieve the theft of the property. See State v. Dixon, 283 So.2d 1 (Fla. 1973).
The court found none of the statutory mitigating factors to exist, but in considering nonstatutory mitigating evidence, found:
The defendant is the product of a broken home; raised in a ghetto area and in poverty. His father, a retired career Navy man visited with the defendant in September of 1965 and promised to take his son from the filth in which he was being reared. After raising the young boy's hopes, without reason, cause or justification, his father walked away, leaving him emotionally devastated.
We reject Scott's contention that the court erred in excusing, for cause, jurors who unequivocally stated that they would not recommend the death penalty under any circumstances. Downs v. State, 386 So.2d 788 (Fla.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 238 (1980); Witt v. State, 342 So.2d 497 (Fla.), cert. denied, 434 U.S. 935, 98 S.Ct. 422, 54 L.Ed.2d 294 (1977).
We find no merit to Scott's claims that the court erred in finding that the capital felony of which the defendant was found guilty was committed while he was engaged or was an accomplice in the commission of, or an attempt to commit, robbery and/or burglary and was committed for pecuniary gain and in finding that the murder was cruel. These findings are supported by the record and are entirely appropriate in the present case. His assertion that the court reversibly erred in not allowing a journalist opposed to the death penalty to testify during the sentencing phase that Scott should be in prison and his other challenges to the imposition of the death penalty are without merit.
Scott's attack on the constitutionality of Florida's death penalty statute have been previously rejected by this Court and the Supreme Court of the United States. Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979); McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Chambers v. State, 339 So.2d 204 (Fla. 1976).
Having found no reversible error, we affirm Scott's conviction for murder in the first degree and his sentence of death.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, ALDERMAN and McDONALD, JJ., concur.
OVERTON, J., concurs in result only.