513 So.2d 653 (1987)
Paul William SCOTT, Appellant,
v.
STATE of Florida, Appellee.
No. 69341.
Supreme Court of Florida.
August 20, 1987.
Rehearing Denied October 28, 1987.
*654 Paul Morris, of Law Offices of Paul Morris, P.A., and Stephen H. Rosen, of Law Office of Stephen H. Rosen, P.A., Coral Gables, for appellant.
Robert A. Butterworth, Atty. Gen., and Lee Rosenthal, Asst. Atty. Gen., West Palm Beach, for appellee.
BARKETT, Justice.
Appellant, Paul William Scott, brings this appeal to challenge the trial court's denial of his motion pursuant to Florida Rule of Criminal Procedure 3.850 to vacate his conviction and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
Paul William Scott was convicted of first-degree murder and sentenced to death. The conviction and sentence were affirmed by this Court. Scott v. State, 411 So.2d 866 (Fla. 1982). In Scott v. Wainwright, 433 So.2d 974 (Fla. 1983), this Court rejected claims raised in requests for stay of execution, habeas corpus and coram nobis relief, following which the defendant sought relief in the United States District Court for the Southern District of Florida. The federal district court stayed the execution pending consideration of the federal claims and thereafter entered an order continuing the stay while the defendant sought relief in the state courts via Florida Rule of Criminal Procedure 3.850. The trial court conducted an evidentiary hearing on the defendant's motion and denied relief, resulting in this appeal.
The central issue presented in defendant's motion and at the resulting evidentiary hearing was whether defendant's court-appointed counsel had been ineffective at Scott's trial in failing (a) to obtain and present the testimony of the co-perpetrator, Richard Kondian; (b) to properly impeach the state's key witness, Charles Soutullo; (c) to adequately cross-examine the state's medical expert; and (d) to present evidence during the sentencing phase that Scott had helped save a counselor's life while incarcerated in California.
Three witnesses testified on behalf of appellant at the 3.850 hearing: (1) Richard Kondian, the co-perpetrator; (2) George Barrs, the defendant's trial counsel; and (3) David Roth, Kondian's lawyer. The state presented no witnesses.
The crime for which appellant was convicted was the bludgeoning murder of James Alessi. On the evening of the murder, according to Charles Soutullo, Scott and his co-perpetrator, Richard Kondian, told Soutullo of their plan to rob and kill Alessi, and invited Soutullo to join them. He declined. Later, Alessi, who knew Scott and Kondian, picked them up and arrived at Alessi's father's home around 11 p.m. The victim borrowed his father's station wagon and patio umbrella. The three then drove off, one driving the station wagon, and two in Alessi's car.
The next morning, Alessi's nude body was found in his home. The victim's hands and feet were bound with electrical cord, and he had been brutally beaten about the head, chest and arms. He had sustained six blows to the head with a blunt instrument, one of which was so severe that it caused a compressed fracture of the skull. The head injuries were the cause of death, and there was evidence the victim was still alive when bound. In the victim's home, there were many signs of a violent struggle. Broken articles and bloodstains were found throughout the house. Scott's fingerprints were found on the neck of a broken vase, on the bloodstained knife that had been used to cut the electrical cord used to tie the victim, and elsewhere.
Scott was found a month later in Sacramento, California, and had in his possession various items of jewelry, including a golden bear charm like one the victim had worn.
At the trial, the appellant defended against the murder charges by attempting to blame Kondian for the actual murder and minimize his own involvement. At the hearing below, however, appellant argued that his counsel should have presented the testimony of Richard Kondian as initially related by Kondian to the Rhode Island *655 police when he was arrested. Kondian had told the police that he and Scott were at Alessi's house to effect a drug purchase when Alessi attempted to rape Kondian. When the two men began struggling, stated Kondian, Scott ran to his friend's defense. In his motion below, Scott contended that his defense counsel was prejudically ineffective in failing to advance a "defense of others" theory based on Kondian's initial statements.
First, we do not find that appellant has met his burden of showing that defense counsel at trial had the ability to present Kondian's story at appellant's trial. At the time of Scott's trial, Kondian was awaiting his own trial on the same charges. Kondian's lawyer testified at the hearing below that he would not have permitted Kondian to testify in any manner, including by affidavit, unless he was assured that the testimony could not be used against his client in any way.
Moreover, Kondian's story to the Rhode Island police completely contradicted defense counsel's theory that Kondian did the killing. Indeed, Kondian told police that Scott had dealt the majority of the blows suffered by Alessi and that his own role in the struggle had been minimal. Based on the facts in this record, a "defense of others" theory and a theory that Kondian primarily was responsible for the murder could not have been asserted at the same trial. Thus, even if Kondian's testimony had been available, we would have to decide whether counsel was ineffective in failing to pursue one theory of defense rather than the other. We cannot view this choice as anything but a strategic one, especially in light of medical evidence indicating that Alessi had been beaten and killed after he had been bound with the electrical cord.
As to the second argument, we find that the jury was adequately apprised of Soutullo's character, reputation for dishonesty and his past crimes. On cross-examination, defense counsel elicited testimony that Soutullo initially had lied to police, and he impeached Soutullo on the basis of several prior felony arrests and convictions. Moreover, the prosecutor himself apprised the jury of Soutullo's reputation.
Third, we find that defense counsel did not fail to adduce testimony tending to show that Alessi had engaged in sexual activity prior to his death. A medical examiner testified that traces of seminal fluid found on Alessi's body were the result either of sexual activity or a spontaneous emission caused by a blow to the head. Moreover, even if we found that defense counsel was derelict in cross-examining this witness, the only purpose in pursuing this line of questioning would be to establish that Scott acted in defense of Kondian. Even if we concluded that Alessi raped or attempted to rape Kondian,[*] the physical evidence accompanying the murder is inconsistent with such a defense.
As to the fourth point, we find that defense counsel properly adduced testimony from Dr. Brad Fisher during the penalty phase that Scott, while incarcerated in California, had taken actions that may have saved the life of a counselor.
Thus, we find that the trial court did not err in its determination that Scott failed to meet the requirements of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Accordingly, we affirm the order of the court below.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, SHAW, GRIMES and KOGAN, JJ., concur.
NOTES
[*] The record itself casts considerable doubt on such an assumption. At Kondian's sentencing hearing, his own attorney admitted that Alessi had procured Kondian "for homosexual purposes" and that Kondian had seen Alessi on occasions prior to the murder. Moreover, Scott himself in his clemency hearing testified that, the night of the murder, Kondian deliberately engaged in sex with Alessi so that Scott could rummage through the house for things to steal.