634 So.2d 1062 (1993)
Paul William SCOTT, Petitioner,
v.
Richard L. DUGGER, Respondent.
Paul William SCOTT, Appellant,
v.
STATE of Florida, Appellee.
Nos. 76831, 77756.
Supreme Court of Florida.
November 4, 1993.
Rehearings Denied February 24, and April 12, 1994.
*1063 Michael J. Minerva, Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR and Kenneth D. Driggs, Asst. CCR, Office of the Capital Collateral Representative, Tallahassee, Billy H. Nolas, Special Appointed CCR, Ocala, and Clyde M. Taylor, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen. and Celia A. Terenzio, Asst. Atty. Gen., West Palm Beach, for respondent/appellee.
PER CURIAM.
Paul William Scott appeals the trial court's denial of his motion under Florida Rule of Criminal Procedure 3.850. Scott has also filed a petition for writ of habeas corpus directly with this Court that asserts the same claims. We affirm the trial court's denial of Scott's rule 3.850 motion and deny his motion for writ of habeas corpus.[1]
Scott was sentenced to death for the bludgeoning murder of James Alessi. The facts of the murder are set out in Scott v. State, 411 So.2d 866 (Fla. 1982), in which we affirmed Scott's conviction and sentence of death. Pertinent to these proceedings are the following facts taken from that opinion:
Alessi picked up Scott and Kondian. At approximately 11 p.m. they arrived at Alessi's father's home where the victim borrowed his father's station wagon and obtained a patio umbrella from his father. They then drove off in the victim's car and in his father's car. The patio umbrella was later found in the victim's backyard.
The next morning the victim's nude body, which was covered with blood, was discovered in his home. His hands and feet were tightly bound with electrical cord and telephone wire. He had been brutally beaten about his head, chest, and arms. He had sustained six blows to the head with a blunt instrument, one of which was so severe that it had caused a compressed fracture of the skull. The head injuries were the cause of his death. There were many signs of a violent struggle by the victim in his attempt to get away from his assailants. Throughout the house were broken articles and bloodstains on the walls, furniture, curtains, and floors. Scott's fingerprints were found on various items throughout the victim's home, including the neck of a broken vase and the bloodstained knife on the sofa which apparently had been used to cut the electrical cords used to tie the victim.
Id. at 867. That opinion also articulated the following findings of the trial judge that justified the imposition of the death penalty:
The trial court found four aggravating circumstances: (1) Defendant was under sentence of imprisonment  parole  when he committed the murder. (2) He was previously convicted of a felony involving violence to the person  second-degree murder. (3) The murder was committed while he was engaged or was an accomplice in the commission of, or the attempt to commit, a robbery and/or burglary and was committed for pecuniary gain. This was counted as one aggravating circumstance. (4) The murder was cruel. As to the cruelty of the offense, the court stated:
"(h) The capital felony was cruel. A picture is worth a thousand words and all one must do to justify this aggravating circumstance is to view the color photographs of the interior of the house where the homicide occurred and conclude with the body of the victim with his hands and feet tied. This is not one or two blows which resulted in instantaneous or near instantaneous death. The struggle between the assailants and the victim moved from room to *1064 room; blood is everywhere. The doctor testified the victim was still alive when his hands and feet were bound. There remained no reason to pursue the beating to accomplish the thefts. The subsequent blows to the head were fatal and the entire episode can only reflect there being imposed upon the victim a high degree of pain with little indifference to, or even the enjoyment of the suffering of the victim. It was pitiless and totally unnecessary to achieve the theft of the property."
Id. at 869.
Subsequently, Scott sought a stay of execution, a writ of habeas corpus, and a writ of error coram nobis, which this Court denied as reflected in our opinion in Scott v. Wainwright, 433 So.2d 974 (Fla. 1983). Scott subsequently filed a Florida Rule of Criminal Procedure 3.850 motion in the circuit court. The circuit court, after an evidentiary hearing, denied relief, and this Court affirmed. Scott v. State, 513 So.2d 653 (Fla. 1987). In that decision, we stated:
[T]he appellant defended against the murder charges by attempting to blame Kondian for the actual murder and minimize his own involvement. At the hearing below, however, appellant argued that his counsel should have presented the testimony of Richard Kondian as initially related by Kondian to the Rhode Island police when he was arrested. Kondian had told the police that he and Scott were at Alessi's house to effect a drug purchase when Alessi attempted to rape Kondian. When the two men began struggling, stated Kondian, Scott ran to his friend's defense. In his motion below, Scott contended that his defense counsel was prejudicially ineffective in failing to advance a "defense of others" theory based on Kondian's initial statements.
Id. at 654-55. We found no ineffectiveness of counsel in rejecting that claim.
Scott then filed for federal habeas corpus relief in the United States District Court, which was denied in Scott v. Dugger, 686 F. Supp. 1488 (S.D.Fla. 1988). That decision was affirmed by the Eleventh Circuit Court of Appeals in Scott v. Dugger, 891 F.2d 800 (11th Cir.1989), cert. denied, 498 U.S. 881, 111 S.Ct. 224, 112 L.Ed.2d 179 (1990).
On October 19, 1990, the Governor signed a death warrant and Scott was scheduled to be executed on October 30, 1990. On October 26, 1990, Scott's counsel withdrew, and the office of the Capital Collateral Representative entered the case and sought a stay of execution and a writ of habeas corpus. This Court granted the stay of execution to allow his new counsel an opportunity to file motions for postconviction relief. The rule 3.850 motion that is now before the Court is the result of that action. The motion asserts that relief should be granted principally because of allegedly new statements by Scott's codefendant, Richard Kondian, and the recanting of a State's witness's trial testimony. The trial court summarily denied the motion without an evidentiary hearing.
In this appeal, Scott alleges that: 1) the circuit court erred by summarily denying his second rule 3.850 motion without conducting an evidentiary hearing or attaching those portions of the record that refute his claims; 2) newly discovered evidence establishes that Scott was innocent of first-degree murder; 3) newly discovered evidence of Scott's codefendant's 45-year sentence renders Scott's sentence disproportionate, and that other newly discovered evidence negates the aggravating factors found by the trial court and establishes additional mitigating factors; 4) he was erroneously denied an opportunity to present exculpatory evidence to the jury due to either prosecutorial misconduct or the ineffectiveness of defense counsel; 5) he was denied the effective assistance of counsel; 6) the prosecutor improperly argued inapplicable aggravating factors; and 7) his sentence was unconstitutionally founded on arbitrary, capricious, and impermissible evidence because the state emphasized nonstatutory aggravating factors during the penalty phase proceeding.
Scott's claims I through V are based on the following allegedly new evidence: 1) the affidavit signed by Scott's codefendant, Richard Kondian, which acknowledges Kondian's and Scott's violent struggle with the victim and asserts that Scott did not intend to murder the victim; 2) the affidavit of one of the *1065 State's witnesses, Charles Soutullo, in which he recants his testimony at trial that Scott had told him that he (Scott) planned to rob the victim; 3) the fact that Kondian told Rhode Island police that he had cut his finger on a broken bottle during the struggle with the victim; 4) Kondian's forty-five-year sentence, imposed after Scott's conviction and sentence pursuant to a negotiated plea; and 5) Scott's trial and postconviction counsel rendered ineffective assistance by failing to investigate the facts stated above and by failing to raise them at trial or in postconviction proceedings.
The assertion that Kondian had committed the murder and that Kondian had injured his finger during a struggle with the victim were both known prior to the initial trial and raised at trial and in prior collateral proceedings. See Scott v. State, 411 So.2d 866 (Fla. 1982); Scott v. State, 513 So.2d 653 (Fla. 1987). We find that these are not new issues. One of Scott's theories at trial was that Kondian killed the victim. Furthermore, Scott previously raised these claims in a motion for writ of error coram nobis. See Scott v. Wainwright, 433 So.2d 974. As we stated in Scott v. Wainwright: "The `new evidence' that Scott wants to present at a new sentencing hearing relates to his version of how the murder was committed. This is now `newly discovered' evidence." Id. at 976. Last, none of the affidavits submitted with the instant rule 3.850 motion exonerates Scott. Kondian's affidavit and his statements at his plea hearing acknowledge that Scott participated in the savage beating of the victim. The only allegation beneficial to Scott in Kondian's affidavit is Kondian's statement that Scott never intended to kill the victim. We note that the evidence establishes that the victim died from multiple blows to the head that he received after he had been bound hand and foot. Looking at the entire record of all three proceedings before this Court, we find that the evidence asserted as new in these proceedings is not newly discovered evidence. Jones v. State, 591 So.2d 911 (Fla. 1992); Preston v. State, 564 So.2d 120 (Fla. 1990). We conclude that Scott is procedurally barred from relitigating this issue. Francis v. Barton, 581 So.2d 583 (Fla.), cert. denied, ___ U.S. ___, 111 S.Ct. 2879, 115 L.Ed.2d 1045 (1991).
Scott's next claim concerns the affidavit of Charles Soutullo, the State's witness, wherein he recants that part of his trial testimony where he stated that Scott had expressed his intention to rob the victim. We find that, under the record in this case, Soutullo's change of testimony would not have produced a different result. Scott acknowledged his participation in the victim's murder and Scott's own testimony during his clemency proceeding contradicts Soutullo's new statements.
Although it was unknown at the time of Scott's direct appeal, the fact that Richard Kondian pleaded guilty and received a forty-five-year sentence was known prior to Scott's previous motions for postconviction relief. Consequently, this claim is procedurally barred because it should have been raised in Scott's prior motions for postconviction relief. Francis; Spaziano v. State, 570 So.2d 289 (Fla. 1990). Scott's remaining claims are also procedurally barred and merit no further discussion.
We conclude that this record clearly establishes that Scott is not entitled to relief and that his motion for postconviction relief under rule 3.850 was properly denied without an evidentiary hearing. See Lightbourne v. State, 471 So.2d 27 (Fla. 1985); Riley v. State, 433 So.2d 976 (Fla. 1983). We conclude that Scott's petition for habeas corpus is also without merit. Accordingly, the trial court's denial of Scott's rule 3.850 motion is affirmed and Scott's petition for writ of habeas corpus is denied.
It is so ordered.
BARKETT, C.J., and OVERTON, McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] We have jurisdiction. Art. V, 3(b)(1), (9), Fla. Const.