**Paul William SCOTT, Petitioner,**

v.

**Harry K. SINGLETARY, Secretary, Florida Department of Corrections, Respondent.**

No. 83–8293–CIV.

United States District Court, S.D. Florida, Miami Division.

Nov. 7, 1994.

---

See also, 411 So.2d 866.

Martin J. McClain, Chief Asst., Office of Capital Collateral Representative, Tallahassee, FL, for petitioner.

Cecilia Terenzio, Asst. Atty. Gen., West Palm Beach, FL, for respondent.

## MEMORANDUM ORDER

K. MICHAEL MOORE, District Judge.

**THIS CAUSE** came before the Court upon Petitioner's emergency motion for relief from judgment (October 28, 1994). Having reviewed the record, considered the argument of counsel, and been advised on the premises, the Court **DENIES** Petitioner's motion for the reasons expressed below.

### I. Procedural Background

Petitioner Paul Scott is under sentence of death for the December 1978 murder of James Alessi.[1] A jury returned a general verdict of guilty against Scott after being instructed on premeditated murder and felony murder charges. Upon the jury's recommendation, the state trial court imposed the death penalty. Scott took a direct appeal of his conviction and sentence to the Supreme Court of Florida. The Florida Supreme Court denied his appeal as well as a subsequent state habeas petition. The State then

---

1. The facts of Scott's crime are set forth in the Court's denial of his petition for writ of habeas corpus six years ago. *Scott v. Dugger,* 686 F.Supp. 1488, 1494–96 (S.D.Fla.1988).

scheduled Scott's execution on June 7, 1983. Scott filed his federal petition for habeas corpus on that same day, and this Court stayed his execution.

Five years passed. During that time, this Court stayed its own proceedings so that Scott could exhaust his state remedies with respect to certain claims. After the Florida Supreme Court rejected these claims, this Court denied habeas relief. *Scott v. Dugger*, 686 F.Supp. 1488 (S.D.Fla.1988). The Court of Appeals affirmed this decision in a per curiam opinion. *Scott v. Dugger*, 891 F.2d 800 (11th Cir.1989) (per curiam).

Florida's Governor rescheduled Scott's execution for October 30, 1990. One day prior to that date, Scott obtained a stay of execution from the Florida Supreme Court so that his new counsel could file a petition for post-conviction relief with the state trial court. The Florida Supreme Court affirmed the subsequent denial of post-conviction relief, as well as another state petition for writ of habeas corpus, in 1993. *Scott v. Dugger*, 634 So.2d 1062 (Fla.1993) (per curiam). After a clemency hearing was held on September 14, 1994, the Governor signed a death warrant scheduling Scott's execution for November 16, 1994.

Scott returned to this Court on October 28, 1994, seeking relief from the Court's 1988 denial of his habeas petition. Scott contends that a very recent decision by the Court of Appeals, *Glock v. Singletary*, 36 F.3d 1014 (11th Cir.1994), warrants reconsideration of the constitutionality of his sentence. Scott's motion (the "Motion"), which is brought pursuant to Federal Rule of Civil Procedure 60(b)(6), makes the following claim:

> Under *Glock*, the Eleventh Circuit [in *Scott* ] erroneously found no merit to Mr. Scott's claim that the "heinous, atrocious or cruel" aggravating circumstance was applied in an overbroad and vague manner when the penalty phase jury did not receive adequate guidance regarding a narrowing construction. *Glock v. Singletary* is directly relevant to paragraph 10 in Mr. Scott's first habeas petition and demonstrates that the Eleventh Circuit's prior decision was based upon an error of law.

Scott's Motion at 2. *See also id.* at 10 (because of *Glock*, arguments raised in petition for rehearing in *Scott* appeal "have now been held to be meritorious"). As presented by Scott, then, the question before this Court is a very narrow one: Did *Glock* effectively "overrule" the Eleventh Circuit's opinion in *Scott*, requiring this Court to grant Scott relief under Rule 60(b)(6)?

## II. Discussion

Rule 60(b)(6) provides that a "court may relieve a party ... from a final judgment, order, or proceeding for ... any ... reason justifying relief from the operation of judgment." Fed.R.Civ.P. 60(b)(6). "The law is well established that Rule 60(b)(6) affords relief from a final judgment only under extraordinary circumstances." *High v. Zant*, 916 F.2d 1507, 1509 (11th Cir.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). "It is also well settled that the matter is within the sound discretion of the district court." *Id.*

■ A supervening change in the law can, but need not always, constitute sufficiently extraordinary circumstances to warrant relief under Rule 60(b)(6). *Id.; Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir.), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987). The following factors are relevant to whether a district court should grant relief from a judgment because of the advent of new precedent: (1) whether the change in the law is final and definitive; (2) whether the judgment has been executed; (3) whether the Rule 60(b)(6) motion was filed soon after the judgment was rendered; (4) whether the intervening decision is closely related to the instant case; and (5) considerations of comity (the "Rule 60(b)(6) factors"). *High*, 916 F.2d at 1509; *Ritter*, 811 F.2d at 1401–03.

### A. The effect of *Glock* on the law

The Court finds that factor one—obviously the most important factor—weighs against granting Scott's motion. For two reasons, the Court concludes that *Glock* did not overrule *Scott* and has made no relevant final and definitive change in the law.

### 1. Can *Glock* overrule *Scott?*

 *Glock* is a decision by a three-judge panel of the Eleventh Circuit. As such, it cannot have overruled *Scott.* "[P]rior decisions of panels of the Eleventh Circuit may only be overruled by the *en banc* court or the Supreme Court." *United States v. Evans,* 910 F.2d 790, 797 (11th Cir.1990), *aff'd,* ── U.S. ──, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992). *Accord C.G. Willis, Inc. v. Director, OWCP,* 31 F.3d 1112, 1115 n. 8 (11th Cir. 1994). Scott also asserts that *Glock* overruled *Harich v. Wainwright,* 813 F.2d 1082, 1104 (11th Cir.1987), *adopted in relevant part, Harich v. Dugger,* 844 F.2d 1464, 1468–69 (11th Cir.1988) (en banc), *cert. denied,* 489 U.S. 1071, 109 S.Ct. 1355, 103 L.Ed.2d 822 (1989), a decision that *Scott* relied on in disposing of Scott's appeal. Scott's Reply Brief at 22–23.[2] This claim is even less tenable, for *Harich* is a decision by the Eleventh Circuit sitting en banc.

According to Scott, *Glock* was not obligated to follow *Scott* and *Harich* because those cases were overruled by the United States Supreme Court's decision in *Espinosa v. Florida,* ── U.S. ──, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (per curiam). "[A] subsequent panel [of the Eleventh Circuit] is not obligated to follow a prior panel's decision where an intervening Supreme Court decision establishes that the prior panel decision is wrong." *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993); *accord Footman v. Singletary,* 978 F.2d 1207, 1211 (11th Cir. 1992) (panel "may decline to follow a decision of a prior panel if necessary to give full effect to a United States Supreme Court decision").

Scott is wrong. In *Espinosa,* a jury recommended the death penalty after being instructed that it could consider whether the

defendant's crime had been "especially wicked, evil, atrocious or cruel." ── U.S. at ──, 112 S.Ct. at 2927. The jury received no further instruction on how to apply this aggravating circumstance. On appeal, the State of Florida contended that the trial court need not have given a narrowing judicial construction of this statutory aggravating circumstance to the jury because the trial court had considered the narrowing construction before passing sentence. *Id.* at ──, 112 S.Ct. at 2928. The Supreme Court rejected this argument because, under Florida's sentencing scheme, the jury's recommendation of death had tainted the trial court's sentencing decision. *Id.*

*Scott* and *Harich* are not at odds with *Espinosa.* The Eleventh Circuit in *Scott* and *Harich* held that a narrowing construction given by Florida courts[3] to interpret a certain statutory aggravating circumstance[4] was a coherent guide for channelling a jury's sentencing discretion. *Espinosa* does not dispute this conclusion but states only that a trial court's consideration of a narrowing construction is not, by itself, sufficient to render application of the aggravating circumstance constitutional.

Because *Espinosa* did not overrule *Scott* and *Harich,* those cases remain the law of the Eleventh Circuit.[5] *Glock* thus could not have overruled them to establish a final and definite change in the law relevant to his earlier appeal. Being bound to follow *Scott* (and *Harich*), this Court must deny Scott's Motion.[6]

### 2. Is *Glock* inconsistent with *Scott?*

 Even if *Glock* could overrule *Scott,* the Court finds that it does not because the two cases are not inconsistent. A review of

2. Scott reiterated this claim in oral argument on his Motion.

3. This judicial construction is defined later in this Order as "Florida's Narrowing Construction."

4. This statutory aggravating circumstance is defined later in this Order as the "HAC" circumstance.

5. The fact that the Eleventh Circuit reaffirmed *Harich* in a modified opinion issued after *Espinosa* lends further support to this conclusion. *See*

*Henderson v. Dugger,* 925 F.2d 1309, 1317 (11th Cir.1991) (applying *Harich*), *reaffirmed as modified,* 968 F.2d 1070, 1071 (11th Cir.1992), *cert. denied,* ── U.S. ──, 113 S.Ct. 621, 121 L.Ed.2d 554 (1992).

6. At oral argument, Scott represented that he has asked the Eleventh Circuit to recall its mandate in *Scott.* This would appear to be a more appropriate manner than the instant Motion in which to attempt to overturn the Court of Appeals' opinion in this case. *See* 11th Cir.R. 41–1.

the pertinent sentencing instruction given to Scott's penalty phase jury, Scott's federal habeas petition, and Scott's arguments on appeal to the Eleventh Circuit, makes this clear. *Cf. In re Pan Am. World Airways, Inc.*, 905 F.2d 1457, 1461 (11th Cir.1990) (review of argument as raised in earlier proceedings clarified issue on appeal).

The trial court informed the jury that, in determining whether to recommend the death penalty, ·it could consider whether Scott's crime "was especially heinous, atrocious or cruel" (the "HAC" circumstance). The court then read the following construction of this HAC circumstance: "Heinous means extremely wicked or shockingly evil. Atrocious means outrageously wicked and vile. Cruel means designed to inflict a high degree of pain, utter indifference to or enjoyment of the suffering of others, pitilessness" (the "Narrowing Construction Instruction"). *See* Scott's Motion at 12; State's Response at exh. 11.

The trial court's instruction was based on a construction of the HAC circumstance given by the Supreme Court of Florida in *State v. Dixon*, 283 So.2d 1 (Fla.1973), *cert. .denied*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). In that case, the court stated:

> that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked or vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies— the conscienceless or pitiless crime which is unnecessarily torturous to the victim.

*Id.* at 9 ("Florida's Narrowing Construction"). The United States Supreme Court upheld Florida's Narrowing Construction of the HAC circumstance in *Proffitt v. Florida*, 428 U.S. 242, 255–56, 96 S.Ct. 2960, 2968, 49 L.Ed.2d 913 (1976), finding that it sufficiently guided jurors' discretion in recommending the death penalty.

Despite the United States Supreme Court's decision in *Proffitt*, Scott's federal habeas petition asked this Court to conclude that Florida's Narrowing Construction was unconstitutional as applied. Paragraph 10 of the petition read:

> Sentencing discretion was not constitutionally exercised by the finding that·the crime was "heinous, atrocious, or cruel" hereafter, "HAC". *Despite nearly 11 years of reviewing the application of this circumstance to the facts of hundreds of cases, neither in petitioner's case nor in any other case has the Florida Supreme Court been able to settle upon a sufficiently clear, limiting construction of this circumstance so as to provide ·a principled way of distinguishing the cases in which it is imposed from the cases ion [sic] which it is not imposed*—as must be done to guide sentencing discretion sufficiently to satisfy the Eighth Amendmen [sic]. For example, some cases have held that the method of killing alone, e.g., strangulation, can establish the HAC circumstance. Others have held that strangulation alone is not enough to establish HAC, and there is no consistent theory as to what additional facts must be shown. Some cases indicate that HAC entails the defendant's perception of the pain caused to the victim—and his enjoyment of that pain or at least his continuation of the infliction of that pain after having perceived it—as a critical fact in establishing HAC.. [sic] *Accordingly, there is no consistent framework for the application of HAC.* As further evidence thereof, see *Halliwelll [sic] v State*, 323 So.2d 557 (Fla.1975).... There is no logical distinction between the disparate results in *Halliwell* and the petitioner's case.

Habeas Petition at 28–29 (emphasis added) (citations omitted).

Paragraph 10 enunciated a direct challenge to the validity of Florida's Narrowing Construction: it asserted that Florida's Narrowing Construction is so vague that it is applied inconsistently and arbitrarily. Scott's petition thus argued that, because Florida's Narrowing Construction was invalid, the Narrowing Construction Instruction given at his trial could not have provided sufficient guidance to the jury for sentencing.

This Court rejected this argument. Observing that "Scott claims that Florida cases have failed to establish a consistent framework for the application of [the HAC] statutory aggravating factor," the Court concluded that "the Eleventh Circuit recently has definitively rejected Scott's argument that Florida has failed to apply consistently this aggravating factor." *Scott*, 686 F.Supp. at 1513.

Scott raised the same argument on appeal. His opening brief contended that "appellants challenging a finding of 'heinous, atrocious or cruel' [HAC] in the Supreme Court of Florida have been met with not a consistent, reasoned limiting construction of the HAC circumstance. . . . Rather, they have met with a crapshoot." Opening Brief on Appeal at 69. Scott's brief concluded that:

> [i]n the instant case,[ ] *as in all Florida capital cases,* there was a similar absence of guidance for the jury at the trial level. The jury was told of the aggravating circumstances. Presumably, the limitation of arbitrary application of the HAC circumstance would not seriously come into play until review by the Supreme Court of Florida. But because that review itself has been arbitrary and capricious with respect to the HAC circumstance, the Eighth Amendment has been violated. *A review of the Florida Supreme Court's irrational treatment of the circumstance makes the violation obvious.*

*Id.* at 71 (emphasis added). The Court of Appeals summarily disposed of this claim as one it had "previously rejected" in *Harich. Scott*, 891 F.2d at 806. In *Harich,* the Eleventh Circuit upheld Florida's Narrowing Construction against a challenge that the Florida Supreme Court had "utterly failed to limit the application of the [HAC] circumstance in any coherent fashion." 813 F.2d at 1104.

The Court of Appeals' and this Court's decisions in *Scott* are consistent with *Glock.* Significantly, *Glock* reaffirmed *Scott*'s holding that the "Supreme Court of Florida has provided additional language designed to channel the sentencer's discretion with respect to the [HAC] circumstance" and that the "United States Supreme Court has found

Florida's narrowing construction for the (HAC) circumstance to be constitutional." *Glock,* 36 F.3d at 1026–27. The *Glock* court then merely applied *Espinosa* to hold that a petitioner's death sentence was invalid because the jury had not been "provided any narrowing instructions" when it was instructed that it could consider whether the petitioner's crime had been "especially wicked, evil, atrocious, or cruel." *Id.* at 1027. The court further held that the trial judge's consideration of Florida's Narrowing Construction did not cure the failure to provide the narrowing construction to the jury. *Id.* at 1027.

*Glock* says no more than *Espinosa:* it holds that a trial court cannot consider Florida's Narrowing Construction alone but also must give it to the jury. Because this conclusion is consistent with, and is in fact complementary to, *Scott*'s holding that Florida's Narrowing Construction sufficiently clarifies the HAC circumstance, *Glock* does not overrule—or even limit—*Scott* in any way.

Scott asserts, however, that the Narrowing Construction Instruction given at his trial was no less vague than a narrowing construction rejected by the Supreme Court in *Maynard v. Cartwright,* 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). Scott's Motion at 7–9, 12–13; Scott's Reply at 4–6. According to Scott, *Maynard* demonstrates that the Narrowing Construction Instruction's definitions of "heinous," "atrocious," and "cruel" were constitutionally inadequate. *Id.* He further observes that *Glock* cites to *Maynard* and to subsequent cases applying *Maynard.* Scott's Motion at 12.

This argument does not avail Scott. First, even if *Maynard* suggested that the Narrowing Construction Instruction given at his trial was invalid, Scott's Motion is premised on an inconsistency between *Glock* and *Scott,* not *Scott* and *Maynard.* The fact that *Glock* may cite to *Maynard* does not indicate that *Glock* has established new law in this area.

Second, and more importantly, the definitions of "heinous," "atrocious" and "cruel" provided by the Narrowing Construction Instruction were drawn directly from Florida's Narrowing Construction. To the extent that

any of these definitions may be unduly vague, the Eleventh Circuit has held that this vagueness is cured by the concluding statement in Florida's Narrowing Construction that the HAC circumstance is intended to apply to only "the conscienceless or pitiless crime which is unnecessarily torturous to the victim." *Spaziano v. Singletary*, 36 F.3d 1028, 1045 (11th Cir.1994).

*Sua sponte*, the Court observes that the Narrowing Construction Instruction given at Scott's trial omitted this statement. Scott's federal habeas petition never raised this issue, however. His petition—as well as his opening brief before the Eleventh Circuit— did not argue that the Narrowing Construction Instruction *unlawfully deviated from* Florida's Narrowing Construction. Instead, it argued exclusively that Scott's sentencing jury received insufficient guidance as a result of the *general unreliability of Florida's Narrowing Construction*.[7] It is for this reason, *and this reason only*, that Scott contended that his jury did not receive adequate guidance as to how it should apply the HAC circumstance. Scott's failure to object to this specific deficiency in the Narrowing Construction Instruction, as opposed to the general deficiency of Florida's Narrowing Construction, precludes him from reopening this Court's 1988 judgment on this ground. *Cf. Kennedy v. Singletary*, 967 F.2d 1482 (11th Cir.1992) (petitioner's claim that "his sentencing jury was tainted by a constitutionally deficient instruction concerning the allegedly heinous aspect of [his] murders" was not raised in first habeas petition and therefore was barred as abuse of the writ).

Scott denies that he failed to present this issue to this Court or to the Court of Appeals. Taking Scott's argument in his Motion and at oral argument in its most favorable light, Scott suggests that his habeas petition's general challenge of the adequacy of guidance given to his jury was sufficient to raise all vagueness objections to his Narrowing Construction Instruction, regardless of whether they were explicitly stated, before the Courts. Reply Brief at 7–8, 8–10, 22–23.

This argument is without merit. In order to raise a "claim, argument, theory, or de-

fense," a party must clearly present it "in such a way as to afford the district court an opportunity to recognize and rule on it." *In re Pan Am. World Airways, Inc.*, 905 F.2d 1457, 1462 (11th Cir.1990); *accord In re Club Assocs.*, 956 F.2d 1065, 1070 (11th Cir.1992). In *Pan Am.*, a district court held a bifurcated trial in a class action in which plaintiffs claimed that an airline's maternity leave policy discriminated against them on the basis of sex. After a liability-phase hearing, the court determined that a portion of the policy, which required a pregnant flight attendant to take leave immediately after she notified the company of her pregnancy (the "stop" provision), was unlawfully discriminatory in some circumstances. In a subsequent remedy-phase proceeding, a flight attendant ("White") sought damages and reinstatement for her discharge. The airline responded that White had not been fired for discriminatory reasons. Instead, it claimed to have discharged her for failing to comply with a separate portion of the maternity policy that required flight attendants to notify the company as soon as they learned of a pregnancy (the "notice" provision). The airline pointed out that the district court's liability-phase opinion had made no finding that the notice provision was discriminatory and concluded that White's discharge thus had been nondiscriminatory. *Id.* at 1461.

The Eleventh Circuit rejected this claim because, among other reasons, the airline had failed to raise this "notice provision" argument before the district court. The Court of Appeals admitted that the airline had "maintain[ed] that White had been discharged on the basis of a nondiscriminatory policy" and had "mention[ed] in its statement of facts that White had been discharged for failing to comply with the notice provision." *Id.* at 1462. The court nevertheless concluded that the airline:

> never contended ... that the district court's earlier liability-phase opinion had upheld the notice provision while striking down the stop provision; never specifically identified the allegedly nondiscriminatory policy as that set forth in the notice provi-

---

7. The same is true for Scott's opening brief on appeal.

sion; and never directly contended that White was distinguishable from the other flight attendants on the ground that she alone had violated the notice provision. *Id.* at 1462. Instead, the court found that the airline had relied on a different argument to demonstrate that White's termination had been proper:

> What [the airline] did say [to the district court] suggested a much different argument, namely, that because White had continued working past the point at which the district court, in its liability-phase opinion, had said that business necessity might have justified requiring pregnant attendants to stop flying (twenty weeks), she had violated a part of the stop policy that the district court had upheld....

*Id.* Finding that "[t]his argument, and this one alone, was clearly before the district court at the remedy-phase hearing," the court determined that the airline had not properly presented its notice provision argument to the district court. *Id.*

Following *Pan Am.*, this Court concludes that Scott's habeas petition failed to attack the Narrowing Construction Instruction's omission of a portion of Florida's Narrowing Construction. The petition never explicitly made this claim but, instead, relied on an entirely different theory as to why the jury received inadequate guidance in applying the HAC circumstance. Scott continued to pursue this limited attack against the HAC circumstance on appeal, where his opening brief forwarded only the claim that Florida's Narrowing Construction was as incoherent as the HAC circumstance itself.

This Court can find only one case, not cited by Scott, that suggests a contrary conclusion. In *Beam v. Paskett* a habeas petitioner under sentence of death contended that a trial court's application of a "continuing threat" aggravating circumstance was unconstitutional. 3 F.3d 1301, 1305 (9th Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1631, 128 L.Ed.2d 354 (1994). The State of Idaho responded that petitioner had procedurally defaulted on this claim by failing to present it to state courts. The Ninth Circuit disagreed

because, in his direct state appeal, petitioner had generally attacked the State's death penalty statute as "unconstitutionally arbitrary." *Id.* at 1305. Relying on this very vaguely phrased challenge to the statute, the Court reasoned that, "[b]y definition, that challenge would appear to require the court to consider whether the statutory 'continuing threat' factor, as applied, was based upon arbitrary considerations, specifically upon considerations involving past conduct that are unrelated to any legitimate punitive purpose." *Id.* at 1305–06.

*Beam* indicates that a habeas petitioner need only attack his or her sentence and conviction in the most general of terms in order to preserve all specific claims falling under the scope of those terms. *Beam* thus offers some support for Scott's Motion.

*Beam* is distinguishable, however, because it involved a state's claim of procedural default. Because application of the procedural default and related exhaustion of state remedies doctrines can cut off federal review of federal constitutional claims, a petitioner "need only present the substance of a federal constitutional claim to the state courts." *Watson v. Dugger,* 945 F.2d 367, 372 (11th Cir.1991). Here, however, Scott already has had ample opportunity to present his federal claims to federal courts. Given this, a stricter standard, requiring greater precision in pleading claims, is appropriate.

To the extent that *Beam* is not distinguishable from the instant case, the Court expressly declines to follow it. As stated above, the law of this circuit is that a claimant must present his or her claim "in such a way as to afford the district court an opportunity and to rule on it." *Pan Am.,* 905 F.2d at 1462. Scott did not meet this burden. As both the district and appellate court opinions in *Scott* illustrate, Scott framed his attack against the jury's consideration of the HAC circumstance as an attack against Florida's Narrowing Construction, not as a complaint that his trial judge failed to give the entire Florida's Narrowing Construction to the jury.[8]

---

8. In his reply brief and at oral argument, Scott cites *Osborne v. Ohio,* 495 U.S. 103, 125, 110

S.Ct. 1691, 1704–05, 109 L.Ed.2d 98 (1990), in support of his claim that his habeas petition was

The Court concludes that Scott has failed to demonstrate that *Glock* has made a relevant final and definitive change in the law requiring this Court to grant Rule 60(b)(6) relief.

### B. Application of remaining factors

■ The fact that *Glock* neither overrules *Scott* nor represents a relevant final and definitive change in the law is itself sufficient by itself to deny Scott's Motion. Nevertheless, the Court also observes that Rule 60(b)(6) factors three, four and five also weigh against Scott. Scott has filed his Motion six years after the Court rendered its 1988 judgment, and four years after the Court of Appeals dispensed with his appeal. As even Scott admitted at oral argument, this is a lengthy period of time weighing against his motion. Further, *Glock* is not closely related to Scott's case. As explained above, the legal principles at issue in the two cases are different. Finally, federal-state comity is disrupted by Scott's late request to set aside the judgment.

Only factor two favors Scott because he has not been executed. The Court concludes that this factor is outweighed by each and all of the factors discussed above.

Consequently, the Court denies Scott's emergency motion for relief from judgment.[9]

**DONE AND ORDERED.**

---

drafted broadly enough to challenge any and all deficiencies in the Narrowing Construction Instruction. Scott's Reply at 7–8. *Osborne* offers no support for this contention. In that case, the Supreme Court held only that, to preserve a claim for federal habeas review, a defendant need not object to a jury instruction where a state court's prior rulings make it clear that an objection would be futile. Scott makes no claim falling under this doctrine.

9. Because the Court concludes that *Glock* did not overrule *Scott*, it need not address claims that *Glock* represents a new rule or that any vagueness in the trial court's sentencing instructions was harmless.