PER CURIAM.
This case is before the Court on appeal from an order denying a motion for post-conviction DNA testing under Florida Rule of Criminal Procedure 3.853.[1] For the reasons expressed below, we affirm.
FACTUAL AND PROCEDURAL HISTORY
In 1979, Paul Scott was convicted of the first-degree murder of James Alessi. Al-essi died from a compressed fracture of his skull after he sustained six blows to his head with a blunt object. Scott v. State, 411 So.2d 866, 867 (Fla.1982).
The evidence presented at trial revealed that, on the evening of the murder, Scott and his coperpetrator, Richard Kondian, told a third party about their plans to rob and kill Alessi. Id. The next morning, Alessi’s nude body, bound at his hands and feet, was found in his home, covered with blood. Id. Due to the multitude of broken objects and the presence of blood throughout the home, it was clear that a violent struggle had taken place. Id. Scott’s fingerprints were found all through the home, including on the neck of a broken vase and on a “bloodstained knife on the sofa which apparently had been used to cut the electrical cords used to tie the victim.” Id. After Alessi died, Scott and Kondian “rummaged through” Alessi’s house, stole his car, and then went to his jewelry and flower shop and took most of the gold. Id. Scott was arrested a month later in California in possession of several items of jewelry that were apparently the same items stolen from Alessi’s store. Id.
This Court affirmed Scott’s conviction and sentence on direct appeal. Id. It has also affirmed all of the trial court’s orders denying Scott’s various requests for rehearing, habeas corpus, and postconviction relief. See Scott v. State, 717 So.2d 908 (Fla.1998); Scott v. State, 657 So.2d 1129 (Fla.1995); Scott v. Dugger, 634 So.2d 1062 (Fla.1993); Scott v. State, 513 So.2d 653 (Fla.1987); Scott v. State, 464 So.2d 1171 (Fla.1985); Scott v. Wainwright, 433 So.2d 974 (Fla.1983); Scott v. State, 419 So.2d 1058 (Fla.1982).
In December 2005, Scott filed a 3.853 motion pro se and an amended motion requesting appointment of counsel. The trial court appointed Scott legal representation, and his new counsel filed an amended motion for postconvietion DNA testing of blood stains in the following areas: a wood chair in the kitchen, the bed *532 room/family room hallway, a circle of blood, the south wall, a dividing wall, and the hall wall. The amended motion alleged that DNA testing would exonerate Scott by establishing that the blood stains in certain areas are consistent with the victim’s blood and the imprint of a champagne bottle which Kondian admitted (post-trial) he used to strike the victim. The motion also alleged that the results of the DNA tests would show that blood stains in other areas belonged to either Scott or Kondian, not the victim, a point he claims is in direct opposition to the State’s theory at trial.
The trial court denied Scott’s amended motion stating it was
technically legally insufficient in that Defendant fails to allege that he is innocent and fails to allege how the DNA Testing required by the motion would exonerate him of the crime of which he was convicted.
However, even if the Motion was technically legally sufficient, it fails on its merits because the Defendant has failed to show reasonable probability that the Defendant would have been acquitted or would have received a lesser sentence if the DNA evidence tested favorably and had been admitted at trial. The other evidence at trial, specifically fingerprint evidence, indisputably demonstrated that the Defendant was present at the scene. Viewed in its entirety, the evidence at trial is such that there is no reasonable] probability that Defendant would have been acquitted or received a lesser sentence had DNA evidence been admitted.
Scott now appeals the denial of his motion for postconviction DNA testing to this Court. As explained below, we affirm the trial court’s denial of Scott’s amended motion for postconviction DNA testing.
ANALYSIS
Rule 3.853 requires that a motion for postconviction DNA testing include:
(1) a statement of the facts relied upon in support of the motion, including a description of the physical evidence containing DNA to be tested and, if known, the present location or last known location of the evidence and how it originally was obtained;
(2) a statement that the evidence was not previously tested for DNA, or a statement that the results of previous DNA testing were inconclusive and that subsequent scientific developments in DNA testing techniques likely would produce a definitive result establishing that the movant is not the person who committed the crime;
(3) a statement that the movant is innocent and how the DNA testing requested by the motion will exonerate the movant of the crime for which the mov-ant was sentenced, or a statement how the DNA testing will mitigate the sentence received by the movant for that crime;
(4) a statement that identification of the movant is a genuinely disputed issue in the case and why it is an issue or an explanation of how the DNA evidence would either exonerate the defendant or mitigate the sentence that the movant received.
Fla. R.Crim. P. 3.853(b).
A review of Scott’s motion reveals that he adequately described the evidence to be tested, established its last known location, asserted that the evidence had not been previously tested for DNA, and alleged that his identification was genuinely in dispute. He also asserted his innocence and presented his theory of how the DNA evidence will exonerate him. There *533 fore, Scott facially fulfilled the technical requirements of the rule.
However, the motion remains legally insufficient because Scott failed to show that there is a reasonable probability the test results would exonerate him or lessen his sentence. As we have stated, “It is the defendant’s burden to explain, with reference to specific facts about the crime and the items requested to be tested, how the DNA testing will exonerate the defendant of the crime or will mitigate the defendant’s sentence.” Robinson v. State, 865 So.2d 1259, 1265 (Fla.2004) (citing Hitchcock v. State, 866 So.2d 23 (Fla.2004)). And, when the defendant cannot show that DNA will prove or negate a material fact, the request for testing should be denied. See, e.g., Overton v. State, 976 So.2d 536, 569 (Fla.2007) (affirming denial of postconviction DNA testing because it would not prove or disprove any material fact); King v. State, 808 So.2d 1237, 1247-49 (Fla.2002) (affirming denial of DNA testing when defendant could not show that the result would raise a reasonable probability of acquittal); Galloway v. State, 802 So.2d 1173, 1175 (Fla. 1st DCA 2001) (affirming denial of DNA testing, concluding that a mere allegation that the DNA would not match was insufficient to establish that the defendant was not present and a coparticipant in the crime).
In the instant case, the presence or absence of Scott’s blood at the crime scene has no bearing on whether he committed the crime because Scott’s presence at Mr. Alessi’s home is not in question. Consequently, even if DNA testing revealed that Scott’s blood was not at the scene, it would not tend to establish his innocence or prove that he did not strike the victim. See Galloway, 802 So.2d at 1175.
Furthermore, Scott never advanced the theory that he was not present in the victim’s home. In fact, the opposite is true. In his initial brief, Scott stated that he admitted being present for an altercation between himself, the codefendant, and the victim. He also “defended against the murder charges by attempting to blame Kondian for the actual murder and minimize his own involvement.” Scott, 513 So.2d at 654. And, in an earlier 3.850 motion, he even claimed his counsel was ineffective for failing to present a defense of others theory. Id. at 654-55. What Scott has attempted to allege is that he was not present for the actual murder. However, given that Scott has admitted he was involved in an altercation with the victim, Scott cannot reasonably show how the absence of his blood would give rise to a reasonable probability that he did not commit the crime.
Alternatively, Scott asserts that if the DNA test revealed that his blood was at the scene it would lend support to his theory that he acted in defense of Kondi-an. First, as we have previously held, Scott cannot simultaneously allege two competing theories, namely that Kondian was responsible for the murder and Scott’s involvement was minimal and that Scott acted in defense of Kondian. See id.; see also Armour & Co. v. Lambdin, 154 Fla. 86, 16 So.2d 805, 809 (1944) (“[A] suitor is not permitted to invoke the aid of the Courts upon contradictory principles or theories.” (emphasis in original) (quoting 28 C.J.S., Election of Remedies § 2)). Second, this theory is unpersuasive because the presence of Scott’s blood at the scene lends nothing to the theory that he acted in defense of Kondian. Rather, if Scott’s blood was detected, it would only confirm that he was present — a point not in dispute. Third, Scott’s theory that he killed Alessi while defending Kondian is contradicted by the evidence. The doctor in this case testified that
*534 the victim was still alive when his hands and feet were bound. There remained no reason to pursue the beating.... The subsequent blows to the head were fatal and the entire episode can only reflect there being imposed upon the victim a high degree of pain with little indifference to, or even the enjoyment of the suffering of the victim. It was pitiless and totally unnecessary....
Scott, 411 So.2d at 869 (quoting trial court’s sentencing order). Given that ALessi was bound before he was killed, Scott cannot possibly show that he killed Alessi in defense of Kondian.
For the above reasons, we find that Scott has not met his burden of showing how the results of the DNA testing will exonerate him. See generally Hitchcock v. State, 866 So.2d at 28 (holding that it is the defendant’s burden to show “how the DNA testing requested by the motion will exonerate the movant of the crime for which the movant was sentenced, or ... will mitigate the sentence received by the mov-ant for that crime.”) (emphasis in original) (quoting Fla. R.Crim. P. 3.853(b)(8) (2001)). Accordingly, we find that, even though the trial court erred in finding the motion technically insufficient, any error was harmless because the motion failed to show any reasonable probability that Scott would have been acquitted or received a lesser sentence. See Sired v. State, 908 So.2d 321, 325 (Fla.2005) (“[W]e conclude that the circuit court erred in ruling that Sired failed to meet the technical requirements of rule 3.853(b)(3) and (4). We find the error harmless, however ... [because] there is no reasonable probability that Sired would have been acquitted or received a lesser sentence.”).
Scott also claims that the trial court erred by summarily denying his 3.853 motion without making the findings required by the rule, namely whether DNA evidence still exists, whether the results would be admissible at trial or a hearing, and “[w]hether there is a reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial.” Fla. R.Crim. P. 3.853(c)(5). We conclude that this is not reversible error. Although the rule requires the trial court to make these three specific findings, whether the evidence is in existence and whether it would be admissible became irrelevant here after the trial court correctly concluded that Scott presented no argument supporting a reasonable probability that he would be acquitted or would have received a lesser sentence.
We also conclude that it was not necessary for the trial court to conduct an evidentiary hearing on the motion, as Scott suggests, because no further investigation was necessary to determine that no possible DNA test result could exonerate him or lessen his sentence. It simply does not make a difference in this case whether Scott’s blood was present or not. See Hitchcock, 866 So.2d at 27 (“The presence of physical evidence linked to Richard Hitchcock would not establish that Defendant [James Hitchcock] was not at the scene or that he did not commit the murder.” (quoting trial court’s order)).
Finally, we find Scott’s claim that he is constitutionally entitled to a right of access to DNA evidence unpersuasive. First, this claim is procedurally barred because it was never presented to the trial court. See id. at 28 n. 3 (“[T]his argument was not preserved because Hitchcock did not claim a constitutional right to DNA testing before the circuit court below.”). Second, it is meritless because the DNA evidence would not have entitled Scott to any relief. See Cole v. State, 895 So.2d *535 398, 403 n. 1 (Fla.2004) (“Because we agree with the circuit court that Cole would not have been acquitted or received a lesser sentence if he had offered the DNA test results at trial, any constitutional right to access evidence ... is not implicated in this case.”).
Accordingly we affirm the trial court’s denial of Scott’s 3.853 motion for postcon-viction DNA testing.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.

. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.