Jay C. SMITH, Plaintiff,

v.

John J. HOLTZ, et al., Defendants.

No. 4: CV–93–1428.

United States District Court,
M.D. Pennsylvania.

March 24, 1995.

**436**

Gerald J. Williams, Philadelphia, PA, Leslie M. Fields, Lemoyne, PA, for plaintiff.

Gregory R. Neuhauser, Office of the Atty. Gen., Litigation Section, Harrisburg, PA, for defendants.

### MEMORANDUM

McCLURE, District Judge.

## BACKGROUND

Plaintiff Jay C. Smith filed this section 1983 action[1] alleging the violation of his civil rights by defendants in connection with his April, 1986 murder conviction. Plaintiff was convicted of murdering Philadelphia school teacher Susan Reinert and her two children, Michael and Karen Reinert, and was sentenced to death for those crimes. *Commonwealth v. Pennsylvania v. Jay C. Smith,* Crim. Nos. 1677, 1677(A) and 1677(B) (Dauphin Co.). Reinert's body was discovered in Dauphin County on June 25, 1979. The bodies of her children were never found.

Smith defended the charges against him by contending that Reinert and her children had been murdered at the New Jersey shore by William Bradfield and/or his associates of his and that those individuals had then conspired to make it appear that Smith was responsible for the murders. Bradfield had been previously convicted of murdering the three victims.

During Smith's trial, his counsel cross-examined a prosecution witness on the existence of physical evidence found during the autopsy of Reinert's body which supported his theory that the murders had taken place at the New Jersey shore. During cross-examination, prosecution witness John C. Balshy, a former state policeman who had been present during the autopsy, testified that he had observed a grainy substance—which appeared to be sand—between Reinert's toes. Balshy further testified that he had preserved this evidence by pressing it onto rubber "lifters." (Plaintiff's complaint, ¶¶ 20–21). The "lifters" were not produced at trial, and their actual existence was never confirmed by the prosecution during, or at any time prior to, Smith's 1986 trial.

Smith's conviction was reversed on direct appeal to the Pennsylvania Supreme Court, *Commonwealth v. Smith,* 523 Pa. 577, 568 A.2d 600 (1987), on evidentiary grounds unrelated to the alleged concealment of the lifters and his case remanded to the Dauphin County Court of Common Pleas for a new trial.[2]

---

**1.** 42 U.S.C. § 1983.

**2.** On appeal to the Pennsylvania Supreme Court, Smith raised nineteen grounds for reversal of his conviction, including an assertion that the evidence adduced at trial was insufficient as a matter of law to establish his guilt of all elements of the crimes charged. That assertion was rejected by the Pennsylvania Supreme Court. *Smith, supra,* 568 A.2d at 602.

The Supreme Court considered on the merits only one of the nineteen grounds for reversal alleged by Smith—his contention that out-of-court statements allegedly made by co-conspirator Bradfield to his colleagues and others implicating Smith in the Reinert murders constituted inadmissible hearsay. The Supreme Court agreed that admission of the statements constituted reversible error and remanded the case for a new trial on that ground. *Id.* 568 A.2d at 607–610.

Although the defense learned of the prosecution's alleged concealment of the lifters prior to disposition of Smith's appeal by the Pennsylvania Supreme Court and brought the matter to the court's attention, the court did not consider that issue on the merits, preferring instead to have the matter considered in the first instance by the trial court:

On January 19, 1989, this Court ordered the Court of Common Pleas of Dauphin County to conduct an evidentiary hearing regarding certain evidence in the Commonwealth's possession, which may have been exculpatory in nature, but which was never disclosed to the defense. The evidence in question was a 'rubber lifter,' an evidence collection device, which allegedly contained grains of sand found on Mrs. Reinert's feet during the autopsy. Appellant argued that this evidence was significant to his defense in that it would have supported

The case was never retried. In 1988, Smith learned that the lifters about which Balshy testified did in fact exist and that their existence had been concealed from him by the prosecution. He moved, on that basis for dismissal of all charges against him.

Smith's motion for dismissal, filed February 1, 1990, was denied by the Dauphin County Court of Common Pleas. The Pennsylvania Superior Court affirmed the denial on appeal, *Commonwealth v. Smith*, 404 Pa.Super. 553, 591 A.2d 730 (1991). The Pennsylvania Supreme Court reversed on September 18, 1992, *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), and, based on its finding that the Commonwealth had deliberately suppressed the existence of the two adhesive lifters, ordered plaintiff's discharge from custody. The Pennsylvania Supreme Court held that, due to the prosecutorial misconduct which led to plaintiff's conviction, no further charges could be pursued against Smith for the Reinert murders and that a retrial would violate his right against double jeopardy under the Pennsylvania Constitution.

Plaintiff filed this action on September 15, 1993 against the state investigators responsible for reviewing and preserving the evidence against him: John J. Holtz and Ronald F. Colyer, both of the Bureau of Technical Services of the Pennsylvania State Police; Victor Dove, John J. Purcell and William J. Lander of the Central Regional Office of the Bureau of Criminal Investigation of the Office of the Pennsylvania Attorney General; and Paul Yatron, Executive Director of the Attorney General's office in Harrisburg, Pennsylvania. (Plaintiff's complaint, ¶¶ 10–16).

Smith alleges that defendants knowingly and deliberately concealed from him and from his attorney, William Costopoulos, Esq., exculpatory evidence which would have bolstered his claims of innocence in violation of his right to receive from the prosecution exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[3] Plaintiff also asserts the nondisclosure to be a violation of the Rules of Professional Conduct for Attorneys, Rule 3.8. (Plaintiff's complaint, ¶ 38). Smith alleges that the defendants knowingly and intentionally concealed evidence critical to his defense with the intention and effect of denying him a fair trial. (Plaintiff's complaint, ¶¶ 23–29 and 34–35).

Plaintiff alleges that the defendants acted out of a desire to: 1) "avoid public embarrassment of the state police and the office of the attorney general because of the conduct of their investigation;" 2) "avoid confirmation of plaintiff's allegations of prosecutorial misconduct in his post-conviction petitions; and to 'cover up' a persistent, consistent pattern of misconduct and incompetence throughout the investigation of the Reinert murders;" and 3) on the part of defendant Holtz, to receive compensation for his story on the investigation. (Plaintiff's complaint, ¶ 36).

On the basis of the foregoing, plaintiff alleges a cause of action under section 1983 based on the violation of his Fifth, Sixth and Fourteenth Amendment rights. He alleges that he has been deprived of the right to: a) freedom from the deprivation of life, liberty or property without due process of law; b) a fair trial in a criminal prosecution, and the right to be free of malicious prosecution; and c) the right to equal protection of the laws. (Plaintiff's complaint, ¶ 40). As redress for these alleged violations, plaintiff seeks compensatory and punitive damages and attorney's fees pursuant to section 1988.

---

his theory that Mrs. Reinert was killed at the seashore by Bradfield and his associates.
  In view of our disposition, we need not consider this issue in determining whether a new trial should be granted. This evidence will now be available at a subsequent trial, and the jury will be given the opportunity to assess its import within the totality of the evidence presented.
*Smith, supra,* 568 A.2d at 610 n. 8.

3. The failure to disclose exculpatory evidence is a violation of a criminal defendant's constitutional rights. *Snyder v. City of Alexandria,* 870 F.Supp. 672, 689 (E.D.Va.1994), citing *Goodwin v. Metts,* 885 F.2d 157, 163 (4th Cir.1989) ("Being subjected to a prosecution because an officer withheld exculpatory evidence from the prosecutor while urging that the prosecution should go forward can work a constitutional deprivation."), *cert. denied,* 494 U.S. 1081, 110 S.Ct. 1812, 108 L.Ed.2d 942 (1990).

Defendants moved for partial summary judgment[4] on plaintiff's due process and equal protection claims on the ground that there are no material facts in dispute on those claims and that defendants are entitled to judgment on them as a matter of law.

In an order and memorandum dated June 27, 1994, this court granted defendants' motion and entered judgment in defendants' favor on all claims asserted. The basis for the court's ruling was twofold. The court found that plaintiff's malicious prosecution claim was barred under the United States Supreme Court decision in *Albright v. Oliver*, — U.S. —, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (Rehnquist, C.J., plurality opin.), which abrogated the right to proceed on a malicious prosecution claim under the Due Process Clause of the Fourteenth Amendment. The court further found that all section 1983 claims asserted under the Fifth, Sixth and Fourteenth Amendments were barred by the statute of limitations, since plaintiff initiated this action more than two years after learning of the prosecution's alleged concealment of the lifters. Plaintiff appealed that ruling to the United States Court of Appeals for the Third Circuit.

Three days prior to this court's grant of defendants' motion, the United States Supreme Court ruled in *Heck v. Humphrey*, — U.S. —, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), that a civil rights plaintiff cannot maintain a cause of action arising out of a state criminal charge, unless and until he can demonstrate that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at —, 114 S.Ct. at 2372, 129 L.Ed.2d at 394. The Supreme Court's ruling in *Heck, supra*, plainly undercuts the rationale for this court's ruling that plaintiff's section 1983 claims are time-barred.

On the basis of *Heck, supra*, this court certified to the Third Circuit that: "if a Rule 60(b) motion were filed by the plaintiff, the motion would be granted" and the court would "grant reconsideration on the statute of limitations question, grant counsel an opportunity to brief the applicability of *Heck, supra*, to the issues presented here, and unless arguments of the defendants persuade us otherwise, reverse the grant of summary judgment entered in favor of the defendants on plaintiff's section 1983 claim for the denial of a fair trial."

Plaintiff then filed a Rule 60(b) motion[5] asking for relief from the court's entry of judgment against him. Plaintiff also moved for a remand from the Third Circuit. The latter motion was granted, and the matter remanded from the Third Circuit to this court.

Plaintiff's Rule 60 motion has been fully briefed. For the reasons stated herein, the court will grant the motion and vacate the judgment entered June 27, 1994 on plaintiff's Sixth and Fourteenth Amendment claims. However, no basis exists to vacate entry of judgment on plaintiff's Fifth Amendment or Fourteenth Amendment malicious prosecution claim, and the court's ruling on those claims stands. No further discussion is needed on this ruling.

## DISCUSSION

### Standard of review

Plaintiff moves for reconsideration under Fed.R.Civ.P. 60(b). Rule 60(b) confers authority on a district court to relieve a party from a final judgment "[o]n motion and upon such terms as are just" on the basis of any "reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6).

Although the "law is well established that Rule 60(b)(6) affords relief from a final judgment only under extraordinary circumstances," *High v. Zant*, 916 F.2d 1507, 1509 (11th Cir.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991), it is equally "well settled that the matter is within the sound discretion of the district court." *Id.*, *Scott v. Singletary*, 870 F.Supp. 328, 330 (S.D.Fla.1994).

A supervening clarification of controlling law by a higher court can afford a suffi-

---

4. Record document no. 7.

5. Record document no. 24.

cient basis for granting a Rule 60(b) motion. See: *Adams v. Merrill, Lynch, Pierce, Fenner & Bowen*, 888 F.2d 696 (10th Cir.1989) and *Cox v. Wyrick*, 873 F.2d 200 (8th Cir. 1989); *Ritter v. Smith*, 811 F.2d 1398, 1401 (11th Cir.), *cert. denied*, 483 U.S. 1010, 107 S.Ct. 3242, 97 L.Ed.2d 747 (1987); and *Scott, supra*. The following factors are relevant in determining whether grant of a Rule 60(b) motion is appropriate based on change in controlling law: 1) whether the change in the law is final and definitive; 2) whether the judgment has been executed; 3) whether the Rule 60(b)(6) motion was filed soon after the judgment was rendered; 4) whether the intervening decision is closely related to the instant case; and 5) considerations of comity (the "Rule 60(b)(6) factors"). *Scott, supra*, at 330, citing *High, supra*, 916 F.2d at 1509 and *Ritter, supra*, 811 F.2d at 1401–03.

■ One justification for allowing a Rule 60(b) request for relief is to afford the district court an opportunity to correct plain errors and avoid the needless delay and expense incurred by all concerned if the movant's sole remedy was appeal to a higher court. See: *Scott, supra*.

### Rule 60(b)(6) considerations

■ The Supreme Court's decision, issued three days prior to our grant of defendants' motion, plainly justifies granting relief from the judgment under the relevant Rule 60(b)(6) considerations. *Heck, supra*, represents a "final and definitive" clarification of federal constitutional law issued by the nation's highest court. Plaintiff filed a timely appeal to the United States Court of Appeals for the Third Circuit and an equally timely Rule 60(b)(6) motion upon learning of the holding in *Heck, supra*. The Court's holding in *Heck, supra* is directly on point and is not distinguishable on any basis from the facts and issues presented here. Finally, grant of plaintiff's motion is consistent, not inconsistent, with considerations of comity—it affords him an opportunity to pursue a civil action for monetary damages for prosecutorial misconduct acknowledged by the Pennsylvania Supreme Court. See: *Scott, supra*, at 330.

### Heck v. Humphrey

The United States Supreme Court's ruling in *Heck, supra*, changes this court's prior analysis of the timeliness of plaintiff's claims. In *Heck, supra*, the Supreme Court ruled that the cause of action on a civil rights claim arising out of a state criminal charge does not arise until the plaintiff's conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at ——, 114 S.Ct. at 2372, 129 L.Ed.2d at 394.

■ Federal courts apply the state personal injury statute of limitations in section 1983 actions, *Wilson v. Garcia*, 471 U.S. 261, 276–80, 105 S.Ct. 1938, 1947–47, 85 L.Ed.2d 254 (1985). Under the Pennsylvania statute of limitations applicable here, the time limit for filing a section 1983 claim is two years. *Smith v. City of Pittsburgh*, 764 F.2d 188, 194 (3d Cir.1985), *cert. denied*, 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985) and 42 Pa.Cons.Stat.Ann. § 5524.

### Accrual date

■ When the cause of action accrues on a section 1983 claim is a question of federal law. *Albright v. Oliver*, —— U.S. ——, —— n. 6, 114 S.Ct. 807, 816 n. 6, 127 L.Ed.2d 114, 128 n. 6 (1994) (Ginsburg, J. concurring). In general, a section 1983 claim accrues when the facts which support the claim are, or should be, apparent to a person with a reasonably prudent regard for his rights and when the identity of the person or persons responsible for the alleged violation is known or reasonably should have been known to the plaintiff. *McMillian v. Johnson*, 878 F.Supp. 1473 (M.D.Alabama 1995) citing *Mullinax v. McElhenney*, 817 F.2d 711, 716 (11th Cir.1987).

*Heck, supra*, did not expressly indicate when the cause of action accrues on a claim for the denial of a fair trial. The Court's inclusion of the requirement that the underlying conviction be expunged, overturned, or otherwise invalidated makes it impossible for

**440**

the claim to accrue prior to that act. It is only upon the moment of invalidation [6] that this element necessary to establish the claim comes into existence.

That impression is reinforced by the cases decided subsequent to *Heck, supra.* In all such cases, the federal courts have held the accrual date to be no earlier than the date of invalidation.

That was the ruling of the United States District Court for the Middle District of Alabama in *McMillian v. Johnson,* 878 F.Supp. 1473, 1490 (M.D.Alabama 1995). Walter McMillian was prosecuted and convicted of the murder of Ronda Morrison on November 1, 1986 before the Court of Common Pleas of Monroe County, Alabama. McMillian was arrested on charges of first degree murder on June 7, 1987 and convicted by a jury in September, 1988.

Subsequent developments indicated that state and county officials conspired to fabricate inculpatory evidence against McMillian and to conceal from him evidence supporting his claims of innocence. McMillian's conviction was reversed in February, 1993 by the Alabama Court of Criminal Appeals, based on its finding that the prosecution had failed to disclose exculpatory evidence. In March, 1993, the State of Alabama dismissed all charges against McMillian. McMillian was released from custody after serving six years on death row.

Following his release, McMillian filed a section 1983 action in federal court against the Monroe County officials and Alabama state officials allegedly responsible for manufacturing evidence against him and concealing evidence supporting his claims of innocence.

Defendants argued, on a motion for summary judgment, that McMillian's section 1983 claims were time-barred, since McMillian had knowledge of defendants' alleged complicity in depriving him of a fair trial more than two years prior to commencement of the federal action. The district court re-

jected defendants' argument. It found that under *Heck, supra,* McMillian's section 1983 claim for his "allegedly unconstitutional conviction and imprisonment ... did not become cognizable until his conviction and sentence were invalidated by the Alabama Court of Criminal Appeals in February 1993." *Id.* at 1511. See also: *McMillian, supra,* at 1504.

The United States District Court for the Eastern District of Virginia reached the same conclusion in *Snyder v. City of Alexandria,* 870 F.Supp. 672 (E.D.Va.1994). Walter T. Snyder was convicted of rape and other related charges by a Virginia jury on June 25, 1986 and sentenced to forty-five years in prison. His conviction and sentence were upheld on direct appeal. After serving nearly seven years of his sentence, Snyder was pardoned by the Governor of Virginia on April 23, 1993, on the basis of newly performed DNA tests which provided conclusive proof that Snyder had not committed the rape.

Snyder filed a section 1983 action in federal court against the prosecuting officers in April, 1994, within one year after the date of his pardon. The defendants argued that his claims were time-barred because the alleged constitutional violations were committed more than two years prior to his commencement of the federal action. That argument was rejected out-of-hand by the district court. *Id.* at 678 and 685. Citing *Heck, supra,* the district court held that the cause of action for section 1983 claims challenging the manner in which a state reversal was obtained does not accrue until the conviction is invalidated by state or federal authorities. *Snyder, supra,* 870 F.Supp. at 685. On that basis, the district court held that the statute of limitations on Snyder's section 1983 claims for the defendants' alleged role in withholding exculpatory evidence, in improperly swaying the victim's identification of Snyder as her assailant, and in knowingly misrepresenting statements made by Snyder to the police as a confession, did not begin to run until his conviction was invalidated by the governor's pardon. *Id.* at 685.

---

**6.** We use the term "invalidation" in a generic sense to cover all of the possible means of negat-

ing the underlying conviction recognized by the Court in *Heck, supra.*

The district court distinguished between section 1983 claims arising out of alleged Fourth Amendment violations relating to improper search and seizure operations, and those arising out of alleged prosecutorial misconduct in concealing, manufacturing or altering evidence, stating that the cause of action for the latter does not arise under *Heck, supra,* until the conviction has been invalidated. *Id.* at 687–88.

Requiring a section 1983 plaintiff to commence a federal action seeking damages for the denial of his federal constitutional right to a fair trial prior to the final resolution of all state criminal charges against him would run contrary to well established principles of comity and federalism. If such an action were commenced, the federal district court would, in most cases, be compelled to abstain from ruling and stay the action pending final disposition in state court. Any other result would create the possibility of a ruling in conflict with the outcome in state court. See generally: *Snyder, supra,* 870 F.Supp. at 681 n. 17 (The "favorable termination" requirement exists for the purpose of "avoiding conflict with an ongoing criminal prosecution and ensuring that challenges to convictions are determined in an appropriate forum.")

That was the decision reached by the United States District Court for the Northern District of Illinois in *Hudson v. Chicago Police Department,* 860 F.Supp. 521, 523 (N.D.Ill.1994). Gregory W. Hudson filed a section 1983 action against the Chicago Police Department while awaiting trial in state court on double homicide charges. Hudson sought monetary damages for the alleged violation of his civil rights by the Chicago Police Department and the Chicago district attorney staff by conspiring to conceal from him exculpatory evidence. Although Hudson did not seek release from custody, the issues which he raised challenged his custody status, leading the court to consider his complaint as, in part, an application for habeas corpus relief.[7] That finding led the district court to conclude: "If this court allowed this complaint to proceed, a judgment in favor of

Hudson would imply that the defendants withheld exculpatory evidence from Hudson and tampered with the evidence in all the myriad ways he recounts in his complaint, thus undermining any conviction that may be had in Hudson's trial." *Id.* at 523. On that basis, the court held that it was required to abstain from hearing the case and dismissed the complaint, holding open the possibility of relief at a later date under the Supreme Court's holding in *Heck, supra,* upon a showing of acquittal, reversal or expungement. *Id.* "Abstention is appropriate when a plaintiff invokes federal jurisdiction for the purpose of restraining state criminal proceedings." *Id.* at 524, citing *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). See also: *Snyder, supra,* 870 F.Supp. at 679 n. 10 ("The concern here is 'a matter of ripeness, a belief that the malicious prosecution action should not be tried at a time when it might tend to chill testimony in the criminal action, when issues may still be narrowed by the criminal process, and when the civil dispute might still be resolved by compromise or other non-judicial measures if the criminal trial can but proceed to an end.' "), quoting Prosser & Keeton, *Prosser and Keeton on the Law of Torts,* § 119, at 874 (5th ed. 1984).

For all of the reasons expressed above, we conclude that the cause of action for the concealment of or tampering with evidence recognized in *Heck, supra,* does not ripen until the underlying conviction is reversed, expunged, vacated, or otherwise rendered a nullity.[8] *Id.* at ——, 114 S.Ct. at 2327, 129 L.Ed.2d at 394. Any other result would contravene the Supreme Court's requirement that the plaintiff be required to demonstrate invalidation of the underlying conviction before proceeding with a federal constitutional claim based on the conduct of the prosecuting officers.

One aspect of this case renders it different from the prior cases cited. Smith obtained a

---

7. 28 U.S.C. § 2241.

8. Compare: *McMillian, supra,* at 1490 (plaintiff's claims challenging the constitutionality of his

pre-trial detention on death row did not go to the lawfulness of his state criminal conviction and were, therefore, not governed by *Heck, supra*).

reversal of his conviction from the Pennsylvania Supreme Court in 1989. However, the conviction was obtained, not on the grounds which form the basis of his section 1983 claim, i.e. the alleged concealment of evidence, but on the basis of the trial court's admission of inadmissible hearsay.[9] The case was remanded to the trial court for a new trial, although that never came to pass for other reasons.

The 1989 reversal obtained by Smith was not a final disposition of the underlying charges in Smith's favor. He remained incarcerated awaiting retrial for the Reinert murders. It was only with the issuance of the Pennsylvania Supreme Court's order of discharge that all threat of further prosecution ended and the state proceedings against him irrevocably came to an end. Therefore, although Smith had obtained a reversal of the underlying conviction more than two years prior to the filing of this complaint, the reversal was not a termination of the underlying matter in the sense intended by the Supreme Court's holding in *Heck, supra*. Finality was obtained only with the issuance of the Pennsylvania Supreme Court's order discharging him from state custody and barring his retrial.[10] Only upon the issuance of that order did Smith have the ability to establish all of the prerequisites necessary for filing this action. It was, therefore, on that date that his cause of action accrued.

The District Court for the District of Arizona reached the same conclusion without analysis in *Girdler v. Dale*, 859 F.Supp. 1279 (D.Ariz.1994). In that case plaintiff Ray Girdler filed a section 1983 action alleging that the deputy state fire marshals in charge of investigating the arson case against him "knowingly withheld exculpatory evidence ... from the prosecutor, judge, and jury." *Id.* at 1280. Girdler was convicted of arson and two counts of murder in the spring of 1992 and sentenced to a term of incarceration of 21 years on the arson conviction and two 25-year terms for the murder convictions, all

sentences to run consecutively. Girdler filed a petition for post-conviction relief in February, 1988, seeking a new trial on the basis of evidence not presented at his trial suggesting that the fires which gave rise to the charges against him were caused by a phenomenon known as flashover, and that this evidence was not presented at his original trial. His conviction was vacated on November 21, 1990. On December 18, 1991, all charges against him were dismissed.

On September 16, 1993 Girdler filed a section 1983 action in federal court against the deputy fire marshals alleging their violation of his constitutional rights under the Fifth and Fourteenth Amendments. Defendants moved for summary judgment on the ground that plaintiff's section 1983 claim was barred by the two-year Arizona statute of limitations applicable to such actions. The district court disagreed, holding that Girdler's claims accrued on December 18, 1991, the date when all charges against him were dismissed.

Smith's complaint was filed with this court on September 15, 1993, within two years of the Pennsylvania Supreme Court's ruling ordering his discharge from custody and barring any further prosecution against him for the Reinert murders. Plaintiff's Rule 60(b) motion will be granted on that basis.

■ We hold, therefore, that when an accused has been tried and convicted, his section 1983 action for deprivation of a fair trial due to the withholding of exculpatory evidence does not accrue before there has been both an invalidation of that conviction, *Heck, supra*, and a final termination of the criminal proceedings in favor of the accused.

In *Heck*, Justice Scalia stated at the conclusion of the opinion of the Court:

Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor ... so also a § 1983 cause of action for damages attributable to an

---

9. See the discussion at note 2 *infra*.

10. See, e.g., *Snyder, supra*, 870 F.Supp. at 681 (In resolving in plaintiff's favor the question of whether issuance of a pardon from the Virginia Governor satisfied the favorable termination requirement, the district court noted that: "Snyder's pardon substantially impugns and discredits his conviction, and therefore qualifies as a favorable termination of the prosecution against him.")

unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

*Id.,* —— U.S. at ——, 114 S.Ct. at 2374, 129 L.Ed.2d at 396. In *Heck,* the court deemed the invalidation of a conviction or sentence to be the operative equivalent of a termination in the plaintiff's favor. However, the invalidation of a conviction does not always equate to a termination of the criminal proceedings in favor of an accused—it often results only in a remand for a new trial, as in the instant case. If the accused were then retried and convicted, there would, presumably, be no viable § 1983 cause of action, just as there would be no state malicious prosecution cause of action. So as not to interfere with the state process, consistent with habeas exhaustion principles as elaborated upon in *Heck,* there must be finality—a termination of the criminal proceedings. Furthermore, the termination must be "in favor of" the accused, at least in the sense that the charges have been dismissed and the defendant discharged.[11] We therefore hold that there can be no civil action under § 1983 for denial of due process during trial for withholding exculpatory evidence unless and until the charges have been dismissed and the defendant discharged.

■ We hold further, that in the context of this case, "termination in favor of the accused" does not require a showing of innocence of the underlying crime.

Here, Smith's allegations go to the alleged denial of a fair trial. He is not challenging the initial filing of criminal charges against him for the Reinert murders. Rather, his claims go to the manner in which those charges were prosecuted, i.e. the alleged concealment of exculpatory evidence. He is not, therefore, required to allege or prove as an element of his *prima facie* case, that the dismissal of the state charges was based on a determination that he did not commit the Reinert murders. Compare: *Snyder, supra; McMillian, supra,* and *Hudson, supra.*

Certainly, no indication of innocence can be gleaned from the opinion of the Pennsylvania Supreme Court discharging Smith. The prosecutorial misconduct was held to be so egregious—intended to prejudice the defendant and thereby deny him a fair trial—that a second trial would violate his double jeopardy rights as guaranteed by the Pennsylvania Constitution. *Commonwealth v. Smith, supra,* 615 A.2d at 324–325. Where the Pennsylvania Supreme Court has expressly held that the prosecutorial misconduct "violates all principles of justice and fairness embodied in the Pennsylvania Constitution's double jeopardy clause," *Id.* at 324, it would equally violate all principles of justice and fairness to require a showing of innocence as an element of a § 1983 cause of action pertaining to such misconduct.

In rejecting an "indication of innocence" as a necessary element of a § 1983 cause of action, we may not be fully consistent with the common law regarding the tort of malicious prosecution. Section 660 of the Restatement (Second) of Torts (1976) lists four examples of situations in which "a termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution." Comment a to Section 660, headed *"Termination inconsistent with guilt,"* then states

> Proceedings are 'terminated in favor of the accused,' as that phrase is used in § 653 and throughout this Topic, only when their final disposition is such as to indicate the innocence of the accused ....

It is apparent that this is a situation in which the analogy to the common law tort of malicious prosecution is not fully apt. That should be no surprise, as we are here formulating a body of federal substantive law— determining the elements of a federally-enacted cause of action, regarding the alleged deprivation of a fair trial. In reaching our conclusions, we have attempted to follow the

---

11. Accord: *Olsen v. Correiro,* Civ. No. 92–10961–PBS, slip op. at 3–5, 1994 WL 548111 (D.Mass. Sept. 26, 1994) (plea of *nolo contendere*) pursuant to which plaintiff received a sentence of time served (in his case, five years) plus probation did not constitute a termination of underlying proceedings which would allow plaintiff to bring a section 1983 action under *Heck, supra,* for the alleged concealment of exculpatory evidence.

holding in *Heck*, logically extend the Court's reasoning and also satisfy the concerns of Justice Souter and three of his colleagues as expressed in his concurring opinion.

We believe Justice Souter has correctly read the Court's opinion in *Heck* as providing the "appropriate starting point for the inquiry under § 1983," but as not transposing "onto § 1983 elements of the malicious-prosecution tort that are incompatible with the policies of § 1983 and the habeas statute as relevant to claims by state prisoners." *Id.* at ———, 114 S.Ct. at 2379, 129 L.Ed.2d at 402.

Smith's cause of action is not time-barred. It accrued only upon his final discharge, when all habeas exhaustion constraints were removed. The fact that the discharge order and opinion contained no indication of his innocence does not affect the establishment of a cause of action, but may well impact the issue of damages and their causation.

An order will be entered consistent with this memorandum.

### *ORDER # (1)*

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Plaintiff's Rule 60(b) motion (record document no. 24) is granted.

2. The judgment entered June 27, 1994 on plaintiff's section 1983 claims grounded in the Sixth and Fourteenth Amendments is vacated.

3. Plaintiff's claims asserted on the grounds set forth in paragraph 2 above are reinstated, and the Clerk of Court is directed to reopen this case.

4. The case will proceed to trial on the above claims only.

5. The court will issue a separate order scheduling a case management conference.

### *ORDER # (2)*

**IT IS ORDERED THAT:**

1. A **case management conference** will be held on Friday, April 28, 1995, 1995, at 9:00 a.m., in Chambers, Fourth Floor, Federal Building, 240 West Third Street, Williamsport, Pennsylvania.

2. At least one attorney for each party shall attend the conference, be fully familiar with the case, be fully authorized to make decisions in the case, have full authority to effectuate a complete settlement, and otherwise comply with Local Rule 16.2.

3. Because of the highly unusual nature of this case, counsel must attend the conference in person; it will not be held by telephone conference call.

4. No documents need be filed with the court in anticipation of this conference. However, it is expected that counsel will wish to confer on some of the areas to be covered in order to increase the effectiveness of the conference. A Joint Case Management Plan need not be filed.

5. Topics to be discussed at the conference will include the following:

5.1 Settlement of the entire case;

5.2 Alternate dispute resolution;

5.3 Fixing an initial scheduling order;

5.4 Identifying, defining and clarifying issues of fact and of law genuinely in dispute;

5.5 Reviewing the discovery needs of the parties; considering cost effective discovery through voluntary exchange of information and the use of cooperative discovery devices; scheduling the time and length of all discovery events, including the possible phasing of discovery;

5.6 Appropriateness of bifurcation;

5.7 Potential evidentiary problems;

5.8 Such other matters as may be conducive to the just, speedy and inexpensive resolution of the case.