**Jay C. SMITH, Plaintiff,**

v.

**Joseph P. WAMBAUGH, Defendant.**

No. 1:CV–94–1470.

United States District Court,
M.D. Pennsylvania.

May 15, 1995.

George Bochetto, Bochetto & Lentz, P.C., Philadelphia, PA, for plaintiff.

Andrew S. Gordon, Buchanan Ingersoll, P.C., Harrisburg, PA, for defendant.

### MEMORANDUM

McCLURE, District Judge.

## BACKGROUND

Plaintiff Jay C. Smith filed this section 1983 action[1] alleging the violation of his civil rights by defendant Joseph Wambaugh in

connection with Smith's April, 1986 murder conviction. Plaintiff was convicted of murdering Philadelphia school teacher Susan Reinert and her two minor children, Michael and Karen Reinert, and was sentenced to death for those crimes. *Commonwealth v. Pennsylvania v. Jay C. Smith,* Crim. Nos. 1677, 1677(A) and 1677(B) (Dauphin Co.). Reinert's body was discovered in the trunk of her car parked in a hotel parking lot near Harrisburg, Pennsylvania on June 25, 1979. The bodies of her children were never found.

Smith's conviction was reversed on direct appeal to the Pennsylvania Supreme Court, *Commonwealth v. Smith,* 523 Pa. 577, 568 A.2d 600 (1989), on evidentiary grounds unrelated to the alleged concealment of the rubber lifters[2] and his case remanded to the Dauphin County Court of Common Pleas for a new trial.[3]

1. 42 U.S.C. § 1983.

2. During Smith's trial, his counsel cross-examined a prosecution witness on the existence of physical evidence found during the autopsy of Reinert's body which supported his theory that the murders had taken place at the New Jersey shore. During cross-examination, prosecution witness John C. Balshy, a former state policeman who had been present during the autopsy, testified that he had observed a grainy substance—which appeared to be sand—between Reinert's toes. Balshy further testified that he had preserved this evidence by pressing it onto rubber "lifters." (Plaintiff's complaint, ¶¶ 20–21). The "lifters" were not produced at trial, and their actual existence was never confirmed by the prosecution during, or at any time prior to, Smith's 1986 trial.

Smith defended the charges against him by contending that Reinert and her children had been murdered at the New Jersey shore by William Bradfield and/or associates of his and that those individuals had then conspired to make it appear that Smith was responsible for the murders. Bradfield had been previously convicted of murdering the three victims.

For a more complete history of the underlying state criminal action, see the court's memorandum filed on March 24, 1995 in the companion civil rights action filed by Smith against the state investigators responsible for investigating the Reinert murders, *Smith v. Holtz,* 879 F.Supp. 435 (M.D.Pa.1995).

3. On appeal to the Pennsylvania Supreme Court, Smith raised nineteen grounds for reversal of his conviction, including an assertion that the evidence adduced at trial was insufficient as a matter of law to establish his guilt of all elements of

the crimes charged. That assertion was rejected by the Pennsylvania Supreme Court. *Smith, supra,* 568 A.2d at 602.

The Supreme Court considered on the merits only one of the nineteen grounds for reversal alleged by Smith—his contention that out-of-court statements allegedly made by co-conspirator Bradfield to his colleagues and others implicating Smith in the Reinert murders constituted inadmissible hearsay. The Supreme Court agreed that admission of the statements constituted reversible error and remanded the case for a new trial on that ground. *Id.* at 607–610.

Although the defense learned of the prosecution's alleged concealment of the lifters prior to disposition of Smith's appeal by the Pennsylvania Supreme Court and brought the matter to the court's attention, the court did not consider that issue on the merits, preferring instead to have the matter considered in the first instance by the trial court:

On January 19, 1989, this Court ordered the Court of Common Pleas of Dauphin County to conduct an evidentiary hearing regarding certain evidence in the Commonwealth's possession, which may have been exculpatory in nature, but which was never disclosed to the defense. The evidence in question was a 'rubber lifter,' an evidence collection device, which allegedly contained grains of sand found on Mrs. Reinert's feet during the autopsy. Appellant argued that this evidence was significant to his defense in that it would have supported his theory that Mrs. Reinert was killed at the seashore by Bradfield and his associates.

In view of our disposition, we need not consider this issue in determining whether a new trial should be granted. This evidence will now be available at a subsequent trial, and the

The case was never retried. In 1988, Smith learned that the lifters about which Balshy testified did in fact exist and that their existence had been concealed from him by the prosecution. He moved, on that basis, for dismissal of all charges against him.

Smith's motion for dismissal, filed February 1, 1990, was denied by the Dauphin County Court of Common Pleas. The Pennsylvania Superior Court affirmed the denial on appeal, *Commonwealth v. Smith,* 404 Pa.Super. 553, 591 A.2d 730 (1991). The Pennsylvania Supreme Court reversed on September 18, 1992, *Commonwealth v. Smith,* 532 Pa. 177, 615 A.2d 321 (1992), and, based on its finding that the Commonwealth had deliberately suppressed the existence of two adhesive lifters, which supported plaintiff's claim of innocence, ordered plaintiff's discharge from custody. The Pennsylvania Supreme Court held that, due to the prosecutorial misconduct which led to plaintiff's conviction, no further charges could be pursued against Smith for the Reinert murders and that a retrial would violate his right against double jeopardy under the Pennsylvania Constitution.

Plaintiff filed this action on September 14, 1994 against author Joseph P. Wambaugh. Smith alleges that Wambaugh conspired with the Pennsylvania State Police Troopers[4] assigned to investigate the Reinert murders to conceal exculpatory evidence, namely the lifters, and to fabricate evidence linking Smith to the murders. Plaintiff names as Wambaugh's alleged co-conspirators: Pennsylvania State Police Trooper Victor Dove; Pennsylvania State Police Trooper Joseph Van Nort; Pennsylvania State Police Trooper John (Jack) J. Holtz and Pennsylvania Deputy Attorney General Richard L. Guida, Esq. None of these individuals is named as defendant in this action. Wambaugh is the sole defendant.

Smith alleges that initially Holtz and Van Nort were the primary investigators assigned to investigate the Reinert murder. The murder occurred in July, 1979. Smith alleges that in correspondence dated January 29, 1981, Wambaugh promised to pay Van Nort "an additional $45,000.00. This [case] is current and hot which is why I'm offering you this kind of money." (Plaintiff's complaint, ¶ 50). In the sentences just prior to these statements, Wambaugh refers to an alleged agreement between the two to provide information on the Reinert case, stating: "During this period of time you would reveal to me everything you know about the case and supply me with any documents which might help me." (Plaintiff's complaint, ¶ 50).

In correspondence dated June 19, 1981, Van Nort allegedly tells Wambaugh: "Things are going well, here, but slow. I will keep in touch with you." (Plaintiff's complaint, ¶ 51).

Eventually, Smith alleges, other investigators and a prosecutor assigned to the case were brought into the circle and participated in the conspiracy to deprive Smith of his constitutional right to exculpatory evidence and to fabricate evidence implicating him in the murders. (See: plaintiff's complaint, ¶¶ 68–69)

Smith alleges that during his 1986 trial for the Reinert murders, Trooper Dove found the rubber lifters with the sand taken from Susan Reinert's feet, which supported the defense theory that Reinert and her children were murdered at the New Jersey Shore by other individuals. Smith alleges that four business days before the trial ended, Trooper Dove came upon the lifters in a police evidence locker but made no attempt to reveal their existence to the defense and, moreover, took steps to ensure that they would not

---

jury will be given the opportunity to assess its import within the totality of the evidence presented.

*Smith, supra,* 568 A.2d at 610 n. 8.

**4.** In a companion action filed before this court, *Smith v. Holtz,* Civ. No. 93–1428 (M.D.Pa.) on September 15, 1993, Smith asserts section 1983 claims against the state investigators responsible for reviewing and preserving the evidence against him: John J. Holtz and Ronald F. Colyer,

both of the Bureau of Technical Services of the Pennsylvania State Police; Victor Dove, John J. Purcell and William J. Lander of the Central Regional Office of the Bureau of Criminal Investigation of the Office of the Pennsylvania Attorney General; and Paul Yatron, Executive Director of the Attorney General's office in Harrisburg, Pennsylvania.

That case, filed a year prior to the filing of this case, is not time-barred.

come to light. These alleged efforts were apparently effective, Smith alleges, since the existence of the lifters did not come to light until years later, while his criminal conviction for the murders was on direct appeal to the Pennsylvania Supreme Court. Discovery of the lifters and of the prosecution's apparent involvement in concealing their existence from defendant and his counsel led ultimately to the dismissal of all charges against Smith under a Pennsylvania Supreme Court order of discharge barring his retrial on the ground that it would violate the Pennsylvania Constitution's prohibition against double jeopardy. The Supreme Court's ruling of discharge was based on the prosecutorial misconduct in concealing the existence of the lifters.

Smith alleges that the police investigators and a deputy attorney general assigned to the investigation conspired to conceal the lifters and falsify evidence linking him to the murders because they had a mutual pecuniary interest in the success of Wambaugh's book on the murders and in a possible television mini-series based on the book. This led them, Smith alleges, to take steps to increase the likelihood that he would be convicted of the Reinert murders.

Smith asserts three claims against Wambaugh: 1) a section 1983 claim, 42 U.S.C. § 1983, based on Smith's alleged participation in a conspiracy to violate his Fourth, Sixth and Fourteenth Amendment rights (Count I); 2) a state tort claim for civil conspiracy and abuse of process based on alleged acts of evidence tampering for the purpose of altering the course and outcome of plaintiff's criminal trial for the "pecuniary" and "self-aggrandizing interests" of the alleged co-conspirators (Count II); and 3) a state tort claim for abuse of process based on defendant's alleged suborning of evidence tampering (Count III).

Defendant has filed a Rule 12(b)(6) motion to dismiss all claims as time-barred and for failure to state a cause of action on the ground that plaintiff cannot establish termination of the underlying criminal action in his favor, an element essential to his section 1983 claim. For the reasons which follow, defendant's motion will be granted in part. Plaintiff's state tort claims will be dismissed with prejudice as time-barred. Plaintiff's section 1983 claim survives.

## DISCUSSION

### Rule 12(b)(6) motion

In deciding defendants' motion, we are "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). "In determining whether a claim should be dismissed under Rule 12(b)(6)," we look "only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Id.* Dismissal is not appropriate unless "it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations." *Id.*

### Timeliness of section 1983 claim

▮▮▮ Defendant moves to dismiss all claims as time-barred. Federal courts apply the state personal injury statute of limitations in section 1983 actions, *Wilson v. Garcia,* 471 U.S. 261, 276–80, 105 S.Ct. 1938, 1947–49, 85 L.Ed.2d 254 (1985). Under the Pennsylvania statute of limitations applicable here, the time limit for filing a section 1983 claim is two years. *Smith v. City of Pittsburgh,* 764 F.2d 188, 194 (3d Cir.1985), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985) and 42 Pa.Cons.Stat.Ann. § 5524.

▮▮▮ When the cause of action accrues on a section 1983 claim is a question of federal law. *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 813 n. 6, 127 L.Ed.2d 114, 128 n. 6 (1994) (Ginsburg, J. concurring). In general, a section 1983 claim accrues when the facts which support the claim are, or should be, apparent to a person with a reasonably prudent regard for his rights and when the identity of the person or persons responsible for the alleged violation is known or reasonably should have been known to the plaintiff. *McMillian v. Johnson,* 878 F.Supp. 1473, 1490 (M.D.Ala.1995) citing *Mullinax v. McElhenney,* 817 F.2d 711, 716 (11th Cir.1987).

Under the facts alleged here, that occurred on September 18, 1992, the date of plaintiff's discharge from state custody. This action was filed on September 14, 1994, within two years after Smith's discharge by the Pennsylvania Supreme Court pursuant to its order dated September 18, 1992. Under this court's interpretation of the United States Supreme Court's ruling in *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994),[5] plaintiff's section 1983 cause of action accrued on the date of discharge.

The Court's analysis in that case led this court to conclude that the cause of action for the deprivation of a fair trial recognized in *Heck, supra,* does not ripen until the underlying conviction is reversed, expunged, vacated, or otherwise rendered a nullity. *Id.* at 394, ——, 114 S.Ct. at 2372. See generally: *Snyder v. City of Alexandria,* 870 F.Supp. 672 (E.D.Va.1994); *Hudson v. Chicago Police Department,* 860 F.Supp. 521, 523 (N.D.Ill.1994); and *McMillian v. Johnson,* 878 F.Supp. 1473 (M.D.Ala.1995).

Although plaintiff's claim is not asserted against a state actor, it is plainly governed by the Court's ruling in *Heck.* Plaintiff alleges that the Pennsylvania State Police Troopers assigned to investigate the murders conspired with Wambaugh to conceal the rubber lifters which would have supported plaintiff's claim of innocence and also conspired to fabricate inculpatory evidence by encouraging a prosecution witness to change his story. (Plaintiff's complaint, ¶ 46) He can establish his claim that Wambaugh conspired with state actors to deprive him of his federal constitutional right to a fair trial only by attacking the validity of his underlying conviction and the state process used to obtain that conviction.

*Heck* therefore plainly applies to the civil rights conspiracy claim alleged here. Its application renders plaintiff's filing timely.

**Asserted inability to prove favorable termination of underlying action**

Defendant also seeks dismissal of plaintiff's civil rights claim on the ground that plaintiff cannot establish termination of the underlying criminal action in his favor as is required by federal law. For the reasons stated in the memorandum filed by this court on March 24, 1995 in the companion action, *Smith v. Holtz,* 879 F.Supp. 435, we reject defendant's argument on this issue.

**State tort claims**

Plaintiff alleges a state tort claim for civil conspiracy and for abuse of process based on alleged acts of evidence tampering and a state tort claim for abuse of process based on defendant's alleged suborning of evidence tampering.[6] (Plaintiff's complaint, Counts II and III, respectively) Plaintiff alleges that Wambaugh and his alleged co-conspirators "perversely, coercively and/or improperly used the criminal process for a purpose not intended by law; namely to fulfill their pecuniary and/or otherwise self-aggrandizing interests by the evidence tampering means aforesaid." (Plaintiff's complaint, ¶ 84)

To determine when plaintiff's cause of action accrued on the state claims asserted here, it is helpful first to review the underpinnings and elements of plaintiff's state law claims.

Abuse of process is defined by the *Restatement (Second) of Torts,* § 682 as follows:

> One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process.

Cited in *ATX Telecommunications Services v. U.S. Wats,* Civ.A. No. 92–3328, 1993 WL 30076 (E.D.Pa. Feb. 5, 1993) (applying Pennsylvania law). In the comment to section 682, the Restatement explains further:

> a. The gravamen of the misconduct for which the liability stated in this Section is imposed is not the wrongful procurement

---

5. See the memorandum filed by this court on March 24, 1995 in the companion case, *Smith v. Holtz,* 879 F.Supp. 435, for a more thorough analysis of the *Heck* decision and its impact on plaintiff's section 1983 claims.

6. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish ... The subsequent misuse of the process, though properly obtained, constitutes misconduct for which the liability is imposed under the rule stated in this Section.

.... [Illustrations omitted.]

b. "Primarily." The significance of this word is that there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant. Thus the entirely justified prosecution of another on a criminal charge, does not become abuse of process merely because the instigator dislikes the accused and enjoys doing him harm; nor does the instigation of justified bankruptcy proceedings become abuse of process merely because the instigator hopes to derive benefit from the closing down of the business of a competitor.

For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended. The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action or refrain from it.

An action for abuse of process differs from an action for malicious prosecution in several key respects.

The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it ... 'An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it ... On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated ... other than its proper effect and execution.'

Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued.

An action for malicious prosecution is statutorily based, *see* 42 Pa.C.S.A. § 8351, while malicious abuse of process is a common law action.

*Rosen v. Tesoro Petroleum Corporation,* 399 Pa.Super. 226, 582 A.2d 27, 32 (1990) (Internal citations omitted.)

■ It is "the use of the legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020, 1026 (1987). Once a process is issued, the focus is then on the purpose for which it is used. *Jennings v. Shuman,* 567 F.2d 1213, 1218 (3d Cir.1977) (discussing state law in determining parameters of section 1983 action for abuse of process). This purpose can be either legitimate or illegitimate, and if it is found to be illegitimate, an abuse of process occurs. *Id.* at 1219. The presence or absence of probable cause is irrelevant to a claim for abuse of process. *Id.* at 1217.

■ Further, unlike malicious prosecution, a claim for abuse of process does not require the plaintiff to prove that the underlying action terminated in his favor. *Brown v. Johnston,* 675 F.Supp. 287, 290–91 (W.D.Pa. 1987). Nor does it require the plaintiff to demonstrate lack of probable cause for initiating the underlying proceedings. *Junod v. Bader,* 312 Pa.Super. 92, 458 A.2d 251, 253 (1983) See also: *Davis v. Cheltenham Township Police Department,* 767 F.Supp. 104, 106 (E.D.Pa.1991).

■ Both state law claims asserted by Smith are governed by Pennsylvania's two-year statute of limitations. *Harvey v. Pincus,* 549 F.Supp. 332, 342 (E.D.Pa.1982), citing *Jennings v. Shuman,* 567 F.2d 1213, 1217–18 (3d Cir.1977) and 42 Pa.Cons.Stat. Ann. § 5524. The cause of action for these claims "accrues when the process is used for an improper purpose." *Harvey,* 549 F.Supp. at 342.

■ Precisely when that occurred in this case would be impossible for this court to

determine at this stage of the case. While it is obvious that the initial issuance of process against Smith occurred well outside the two-year limitations period, his claim against Wambaugh stems not from that act, but from some act thereafter at the point when Wambaugh allegedly began conspiring with the state investigators to conceal or fabricate evidence to assure a conviction—it was at that point that the "process" was allegedly diverted from its legitimate purpose to, at least in part, the illegitimate one of obtaining Smith's conviction for financial gain regardless of guilt or innocence. Precisely when that occurred cannot be determined at this stage of the case. What is clear, however, from the facts alleged, is that this alleged diversion of the process occurred well beyond the two-year limitations period. Smith was tried in 1986. Any alleged fabrication of evidence had to take place prior to the conclusion of the trial. There would be no point in conspiring to fabricate evidence *after* he was convicted.

The alleged fabrication of evidence is, however, only one aspect of Smith's claims. He also claims here, as he did in the companion action filed against the state police assigned to investigate the Reinert murders, that exculpatory evidence discovered during his trial was concealed from him and his attorney. The existence of the exculpatory evidence did, however, come to light in 1988, again well before the two-year limitations period governing the filing of this action.

Thus, by 1988, only one element remained to give Smith the basis for the asserted state claims against Wambaugh: some basis for suspecting that Wambaugh was involved in an alleged plot to conceal exculpatory evidence or to pervert the criminal prosecution to a purpose other than effecting justice and convicting the individual or individuals responsible for the deaths of Susan Reinert and her children.

That proof came, according to Wambaugh's complaint, in March, 1992 when an individual identified in the complaint only as the "junkman" allegedly discovered in the basement and attic of Trooper Holtz' residence a box of items containing evidence from the Smith trial and notes incriminating the alleged co-conspirators in an alleged plot to convict Smith for their own financial gain and turned those items over to "plaintiff's by-then-former counsel" (an individual not identified by name in the complaint) and someone, whether plaintiff's counsel or some other individual is not indicated, caused an article to be published in the Sunday edition of the "Patriot–News," a Harrisburg, Pennsylvania newspaper. The items allegedly discovered at the Holtz residence included "unspecified correspondence between defendant [Wambaugh] and Trooper Holtz." (Plaintiff's complaint, ¶ 46) Although the correspondence is referred to in paragraph 46 of plaintiff's complaint as unspecified, the introduction to that paragraph states that such correspondence was "[a]mong the items located in ... [the] box that were turned over to plaintiff's former counsel," leaving no doubt that correspondence allegedly linking Wambaugh to the alleged concealment and fabrication of evidence was in the hands of plaintiff's counsel no later than March 17, 1992.

With the publication of that article, all of the elements which plaintiff needed to assert a cause of action against Wambaugh for abuse of process or conspiracy to commit abuse of process existed. He had before him at that point facts suggesting Wambaugh's involvement in a conspiracy to subvert his criminal prosecution for an improper purpose.

Although he had not yet been released from state custody or had his conviction invalidated, neither was a prerequisite for maintaining a claim for abuse of process. See e.g., *Brown*, 675 F.Supp. at 290–91. Cf. *Heck* (By analogy to the state tort claim for malicious prosecution, the Supreme Court held that establishing invalidation of the underlying conviction is a prerequisite for maintaining a section 1983 claim challenging the constitutionality of that conviction).

Plaintiff's state tort claims asserted in Counts II and III of the complaint are, therefore, time-barred, and defendants' motion to dismiss those counts will be granted on that basis.